[No. 25194. Department One. December 21, 1934.]

A. N. BERLIN *et al., Respondents,* v. HAZEL THERESA ROBBINS *et al., Appellants.*[1]

[1]Reported in 38 P. (2d) 1047.

*Revelle, Revelle & Kells,* for appellants.

*Revelle, Simon & Coles* and *John W. Day,* for respondents.

MILLARD, J.—This action was brought to quiet title in plaintiff Berlin to an easement to maintain water pipes across the defendant's land and to withdraw water from a spring thereon to supply the plaintiff's property, and to enjoin the defendant from interfering with the pipes or the flow of the water from the spring. Trial of the cause to the court resulted in judgment granting relief according to the prayer of the complaint. The cause is before us on appeal from that judgment.

As plaintiff Makiyama is a tenant, owner Berlin will be designated respondent. As Hazel T. Robbins is the sole owner of the servient tenement, she will be spoken of as the appellant. The facts are as follows:

David A. Neely owned the Enos Cooper donation claim, a tract of land near Kent, bordering on, and lying west of, the White river. He also owned the David A. Neely donation claim, bordering on, and lying east of, the White river. He died in 1912, and the David A. Neely donation claim was divided into several tracts, the most northerly of which was given to his son J. H. Neely. Title to the Enos Cooper donation claim vested in David A. Neely's five children in equal undivided shares, the son J. H. Neely obtaining one. All of the property was subject to a life estate in David A. Neely's widow, Irene Neely.

In 1914, she laid a pipe line leading from a spring on the Enos Cooper donation claim, in a southeasterly direction across the river, to the David A. Neely donation claim, thence northerly through the several tracts into which that claim had been divided, and terminating on the most northerly tract held by J. H.

Neely. The pipe line was approximately one mile long, and buried in the ground throughout its course to a depth of eighteen inches. On respondent's property, nothing of the water system was apparent, except an iron pipe standing up from the ground with a faucet at the top end of the pipe. There was testimony that, though the pipe line was covered for most of its length, the pipe line was visible on both sides of the White river, on the bottom of which it was laid, for a short distance, subsequent to heavy rainfall. The pipe line was established by the widow Neely in 1914 with the consent of all concerned, and has remained and been continuously used at all times since.

Mrs. Neely died in 1921. In 1925, the Enos Cooper donation claim, which had vested in the five children, was divided. J. H. Neely became the sole owner of that part of the claim on which the spring that supplies the pipe line is located. That is, from 1925 until he parted with his title thereto, J. H. Neely was the sole owner of the land on which the spring is situated (tract now owned by appellant), and also was the sole owner of the land (tract now owned by respondent) at the other end of the pipe line.

This latter tract was mortgaged April 13, 1929, by Neely to the respondent. There is no reference in the mortgage to any easement or water rights of any kind. Mortgagor defaulted, and respondent foreclosed the mortgage in February, 1931. The complaint, findings and decree in the foreclosure proceeding made no reference to an easement or to water rights of any kind. The sheriff's deed obtained by respondent on his purchase on foreclosure does not refer to any easement or water rights.

The respondent's land is used as a dairy farm, on which there are approximately thirty head of stock and a team of horses. A supply of water is necessary

for watering the stock and for cooling milk in order to properly operate the dairy farm. It fairly appears that the only water supply to respondent's property, both for domestic and farm purposes, comes through the pipe line from the spring located on appellant's property.

On September 20, 1932, J. H. Neely sold the land on which the spring is situated to appellant. Subsequently, the respondent endeavored to purchase from her an easement to flow water from that spring through the pipe line described above. He agreed to pay three hundred dollars for the easement, of which amount he paid ten dollars. Having later been advised that he was entitled to withdraw the water without payment therefor, he refused to pay further, and commenced this action.

The evidence is in conflict as to whether respondent knew anything about the spring and pipe line. The evidence is likewise in conflict as to whether appellant knew of the existence of the pipe line when she purchased the land on which the spring is located. It is clear, however, that it is a matter of common knowledge in that vicinity that respondent's property is supplied with water by a pipe line from a spring on appellant's property. One of appellant's witnesses so testified on cross-examination.

The respondent's right to maintain the pipe line to the spring on appellant's land is based on the doctrine of implied grant. Essential thereto are (1) unity of title and subsequent separation by a grant of the dominant tenement, (2) apparent and continuous user, and (3) the easement must be necessary to the proper or reasonable enjoyment of the dominant tenement. That is, if the owner of an estate imposes upon one part of the estate an obvious and reasonably necessary servitude in favor of another

part of the estate, the servitude passes with a conveyance of the dominant portion by implied grant if also, at the time of the severance of ownership, such servitude is in use. The fact that the mortgage through foreclosure of which the mortgagee acquired title to the dominant tenement, contains no mention of the servitude, does not defeat the right of the mortgagee to continue the use of the servitude.

"Where during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made. *Lampman v. Milks,* 21 N. Y. 505; *Kieffer v. Imhoff,* 26 Pa. St. 438; *Pennsylvania R. R. Co. v. Jones,* 50 Pa. St. 417; *Phillips v. Phillips,* 48 Pa. St. 178; *McCarty v. Kitchenman,* 47 Pa. St. 239; Washb. Easements, pp. 56, *et seq.,* 619." *John Hancock Mutual Life Ins. Co. v. Patterson,* 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550.

See, also, *Ellis v. Bassett,* 128 Ind. 118, 27 N. E. 344, 25 Am. St. 421; *Anania v. Serenta,* 275 Pa. 474, 119 Atl. 554; *Johnson v. Gustafson,* 49 Idaho 376, 288 Pac. 427; 19 C. J. 914-915.

Clearly, there was unity of title and there was subsequent separation by a grant of the dominant tenement.

Counsel for appellant contends that the easement was not open and visible. It is apparently con-

ceded that the use of the pipe line has been continuous since its installation.

While the pipe line, for nearly its entire length, was beneath the surface of the ground and a portion rested on the bed of the White river, it was visible on both sides of the river for a short distance after heavy rains. The projecting pipe, with a faucet thereon, on the land of respondent was plainly visible, and it was seen by grantor Neely and respondent, who succeeded, through mortgage foreclosure, to the rights of Neely. That Neely and respondent knew that the water system existed at the time of the execution of the mortgage, at the time of the foreclosure, and at the time of the transfer of the servient tenement to respondent, is amply established by the evidence. Surely, appellant was aware of the servitude. Her father, from whom she acquired the property, knew of its existence, and by appellant's own witness it was established that it is a matter of common knowledge in the vicinity of the Berlin property that respondent's property is supplied with water by the pipe line from appellant's spring. One of respondent's witnesses testified to the same effect.

It is not necessary to a knowledge of the existence of a water system that each foot of the pipe line be "open and obvious." Its existence was a matter of common knowledge, and a portion of the pipe connecting with the water system on respondent's land was open and obvious. The test is not whether the pipe line was actually visible its entire length or a large part thereof.

That the pipe line was beneath the earth's surface does not negative the character of the easement as apparent. In 58 A. L. R. 832, the editor states the rule as follows:

"While there is some conflict of authority as to whether existing drains, pipes, and sewers may be properly characterized as apparent, within the rule as to apparent or visible easements, the majority of the cases which have considered the question have taken the view that appearance and visibility are not synonymous, and that the fact that the pipe, sewer, or drain may be hidden underground does not negative its character as an apparent condition; at least, where the appliances connected with and leading to it are obvious."

In *Larsen v. Peterson,* 53 N. J. Eq. 88, 30 Atl. 1094, the owner of property dug a well which he connected by pipes to each of two houses which were built together on his property. He conveyed one of the houses to the complainant and the other to the defendant. Holding that the purchaser of the servient tenement was chargeable with notice of the existence of a pump on the dominant estate, the court said:

"As to the quality of its being 'apparent,' the fact that it was, in part, hidden in the earth, and so not physically apparent to the eye, is not conclusive. The part on complainant's land—the pump—was visible, and the water must have come either from the land actually conveyed to him or from that conveyed to Peterson. Independent of the actual notice, I am of opinion that Mrs. Peterson, under the peculiar circumstances of this case, is chargeable with notice that there was such a pump on the complainant's tenement, and that it might connect with the well or cistern on the part that was conveyed to her.

"It seems to be well settled that the mere fact that a drain or aqueduct, as the case may be, is concealed from casual vision, does not prevent it from being '*apparent*' in the sense in which that word is used in that connection."

In *Schwann v. Cotton,* (1916) Eng. 2 Ch. 120, it was held that, where it is necessary, in implying a grant of an easement, for it to be apparent, the expression means or includes easements apparent on the prem-

ises granted, and which, on an examination of the granted premises, can be seen or ascertained to exist.

Appellant was not residing on or near the property at the time of the installation of the pipe line. She departed from that vicinity in 1907, but made many visits thereto subsequently, and saw the pipe and faucet on respondent's land. She testified:

"That she had not lived in that neighborhood since [1907] but had visited there many times. That she had been on the Berlin place a number of times before she purchased the seventy acres from J. H. Neely. That she had drunk water on that place and had seen the iron pipe coming up from the ground, from the faucet on the top of which she took water. That she knew this water did not come from a well and knew that it was not from the city water system. That she did not know where the supply of water came from and that she never asked about it."

That is, appellant, who is the daughter of the grantor, knew less about her property and the property of her family than any one in the vicinity of those lands. That can not negative the character of the easement as an apparent condition. The appliances on respondent's land connected with the water system were open and obvious. The fact of the existence of the easement was of common knowledge in the vicinity. All except appellant knew that the supply of water to respondent's land came from springs on appellant's land, flowing through the pipe line in question.

The easement was "apparent." That "apparent," in cases like the one at bar, is not synonymous with "visibility," is sustained by the authorities cited above. See, also, *Wiesel v. Smira*, 49 R. I. 246, 142 Atl. 148, 58 A. L. R. 818. In that case, the owner of several lots constructed a common cover drain, which he connected with the city sewer. He conveyed each of the lots to various persons. Each of the deeds was

in the usual warranty form, and referred to appurtenances. In none of the deeds was any mention made of the drain, and none of the four grantees knew of the existence of the drain at the time of the conveyances. In his excavation preparatory to the erection of a new building on his lot, Wiesel discovered the presence of the drain. Trial of an action brought by him to enjoin the other owners from using the drain extending underneath his premises, resulted in judgment of dismissal. On his appeal therefrom, the judgment was affirmed. The supreme court of Rhode Island said:

"In no prior case has this court dealt with a so-called 'continuous' easement. A drain furnishes a typical example of such an one. It is admitted that the easement here claimed possessed the characteristic of continuity.

"Can it properly be characterized as 'apparent'? The pipe across complainants' land was hidden. For this reason it was asserted that it was not apparent, and therefore no easement could be implied. Tiffany, p. 1281, note 5, discusses how the term 'apparent' came into use. Plainly this pipe was not visible, though the appliances connecting with and leading to it were obvious. Disappearance of waste from Coppen's and Smira's houses was plain. 'Apparent' in such cases is not synonymous with 'visibility' to anyone. 1 Thomp. Real Prop. § 368. It may mean little more than 'continuous.' In *Fetters v. Humphreys*, 18 N. J. Eq. 260, an apparent or continuous easement is said to be one depending on an artificial structure such as a pipe for conveying water and a nonapparent or noncontinuous easement is one such as has no means specially appropriated to its enjoyment and which is enjoyed at intervals such as a right of way. The court says, at page 266: 'A continuous or apparent easement is either a fixture or enjoyed by means of a fixture upon the land itself.' . . .

"From the evidence in this case, while neither complainants nor respondents are shown to have given

any consideration to the matter, it appears that a person ordinarily conversant with drains, to wit, complainants' plumber, readily discovered the existence of the present one. We think that this drain was apparent to Coppen and Lee, within the legal meaning of the term as established by the authorities. Whatever the original grantor owned his warranty deed conveyed. A case closely resembling the present one, and holding that an easement was impliedly granted, was *Stuyvesant v. Early,* 58 App. Div. 242, 68 N. Y. Supp. 752 (covered drainpipe). We recognize that *Dolliff v. Boston & M. R. Co.,* 68 Me. 173 (drain carrying off overflow from a spring), was a claim of easement by implied grant where the court took a view contrary to the Stuyvesant case. The court there acted upon the presumption that the grantor did not intend to pass an easement. Such presumption here seems contrary to his intention as shown by his acts. When respondents bought their houses the original owner plainly intended that they should make use of the existing connections with the public sewer without any express representation in the deed. It was immaterial to the grantees how their sewer connection was made. Grantor knew how it was made and if he did not wish the system then in vogue to be continued it was incumbent upon him to say so. As stated by Story, J., in *United States v. Appleton,* 1 Summ. 492, 502, Fed. Cas. No. 14,463, quoted in *McElroy v. McLeay,* 71 Vt. 396, at page 399, 45 Atl. 899. 'Every grant of a thing naturally and necessarily imports a grant of it as it actually exists unless the contrary is provided for and whatever are properly incidents and appurtenances of the thing granted will pass by mere operation of the law without the word appurtenances.'

''Respondents had a right to rely on the obvious fact that their houses were connected with a sewer system. We cannot agree with *Robinson v. Hillman,* 36 App. D. C. 241, in its holding that the right to maintain a concealed pipe can pass as an easement only by express grant. We hold that respondents by implied grant had the easement to have their sewage run through this pipe when the common owner split up the

land retaining the portion thereof through which the pipe passed. . . .

"Complainants, however, urge that, even if an easement existed by implied grant, a conveyance by the former common owner of the servient tenement retained by him destroyed the easement and we are referred to 9 R. C. L. 'Easements,' § 61; 19 C. J. 940. It is true that the bona fide purchaser of land without actual or constructive notice of existence of an easement may take the land relieved of its burden. When this occurs it is because the dominant tenant has failed to do something which he ought to have done. In the case at bar to whom could the dominant tenant give notice and when? Notice to the grantor was unnecessary because he himself laid the pipe. It can scarcely be contended that Coppen was under a duty to know when the original owner was negotiating for or making a sale of the servient tenement nor had he a duty to follow up mesne conveyances with notices of the easement to the purchasers. . . . Once conceding the existence of an easement by severance of the quasi dominant and quasi servient tenements, we see no way by which the owner of the latter can convey it even to an innocent purchaser freed from said easement without the knowledge or approval of the owner of the dominant tenement. Rights in real property cannot be thus divested. Admittedly there is a hardship upon complainants in a case like the present one but by reason thereof the court is not warranted in destroying respondents' settled property rights and saying to them that they can secure as good results by a different use of their property which they are under no obligation to make. So to do would be an arbitrary exercise of power which is not warranted however desirable and simple the making of new connections may be."

To appellant must be imputed knowledge of facts which she would have acquired by the exercise of ordinary diligence, facts which were of common knowledge, known to all persons except appellant in the vicinity. Appellant must have been fully apprised of the situation when she purchased the servient ten-

ement, hence she may not now successfully urge that the easement was not open and visible and that its purpose was not apparent.

Finally, counsel for appellant contend that the easement claimed was not shown to be necessary to the proper enjoyment of the premises. Authorities are cited to sustain the argument that there can not be an implied grant unless the easement be one of strict necessity; that an easement by necessity is implied only when necessary to the beneficial use of the estate for which it is claimed and where no substitute for it can be obtained at a reasonable expense.

The evidence discloses that the closest point of the water system of the city of Kent is approximately one-half mile distant from respondent's property. It appears from a map introduced in evidence that, to make connection of pipe line on respondent's property with the city's water system, it would be necessary for respondent to go on land belonging to other persons. There was also evidence that there were no wells in the immediate vicinity of respondent's property, and it was doubtful whether good water could be obtained from wells dug on respondent's property. There was controverting testimony by appellant's witnesses.

It fairly appears from the evidence that it would be expensive and would necessitate going on land of his neighbors for respondent to secure water from the city of Kent. Whether the water he could secure from a well dug on his property would be of sufficient quantity to supply the ranch for dairy purposes, is doubtful. It is fair to assume that, if satisfactory water could have been obtained in any other way, Mr. Neely would not, in 1914, have installed a pipe line nearly one mile in length and continuously used same since that time.

The rule is stated as follows in 9 R. C. L. 763-764, § 27:

"It is now generally recognized that it is essential to the creation of an easement by implication on the severance of an estate that the easement shall be necessary, and not merely convenient, to the beneficial enjoyment of the dominant portion. But there is a conflict with regard to the degree of necessity required. In some jurisdictions easements will be implied only when the necessity for them is strict, while in others, and this is the prevailing rule of the modern cases, the necessity required in order to pass an easement by implication is a reasonable, not an absolute, one. The degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. It is sufficient if full enjoyment of the property cannot be had without the easement, or if it materially adds to the value of the land. It has been contended that the use of the word 'necessary' in these cases is misleading; that the so-called 'necessity' upon which the judges rely is in fact no necessity at all, but a mere beneficial and valuable convenience. Certainly such use of the word must be distinguished from the sense in which it is employed in designating ways of necessity. Some courts have adopted as the test, whether the easement is one for which a substitute can be furnished by reasonable labor and expense; while others adopt the rule that the presence of no degree of necessity is requisite in order that the easement shall pass, that if an apparent and continuous quasi easement forms a part of the tenement conveyed, and adds to the value for use, it becomes an easement and passes with the conveyance."

The weight of authority supports the rule that the necessity need only be a reasonable one. Jones on Easements, § 315; 9 R. C. L. 770, § 31; 21 R. C. L. 1218, § 13; 19 C. J. 923; *Pettingill v. Porter,* 8 Allen (Mass.) 1, 85 Am. Dec. 671; *Hart v. Deering,* 222 Mass. 407, 111

N. E. 37; *Davis v. Sikes*, 254 Mass. 540, 151 N. E. 291; *Crotty v. New River, etc., Coal Co.*, 72 W. Va. 68, 78 S. E. 233, 46 L. R. A. (N. S.) 156; *Watson v. French*, 112 Me. 371, 92 Atl. 290, L. R. A. 1915C, 355.

The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute.

In *Watson v. French*, 112 Me. 371, 92 Atl. 290, L. R. A. 1915C, 355, 357, the grantor of the dominant tenement endeavored to cut off the water pipes which went through the theatre building retained by him, and which constituted the servient tenement. It was there contended that it was possible that the plaintiff could apply to the water company to condemn a way through other land in order to connect with plaintiff's property. The following language from the opinion in that case is a complete answer to appellant's argument respecting the rule that there can not be an implied grant unless the easement be one of strict necessity:

"The basis of the plaintiff's claim is the presumption of a grant arising from all the circumstances of the case. This is but the application of the general principle that the grant of a thing is presumed to include and carry with it as an incident of the grant, whatever right the grantor had in connection with it and could convey by apt words, without which the thing granted would prove practically useless to the grantee. One of these circumstances, and oftentimes the controlling one, is the necessity; and however lenient other Courts may be in defining the degree of necessity which must exist in order to raise the implication that the easement or quasi easement passes, as in New Jersey *(Toothe v. Bryce*, 50 N. J. Eq. 589, 25 Atl. 182) and in New York *(Spencer v. Kileen*, 151

N. Y. 390, 45 N. E. 865), the rule has been firmly established in this State, and has been reiterated in many cases, from *Warren v. Blake,* 54 Me. 276, 89 Am. Dec. 748, to *Doten v. Bartlett,* 107 Me. 351, 78 Atl. 456, 32 L. R. A. (N. S.) 1075, that there can be neither implied grant nor implied reservation unless the easement be one of strict necessity. Mere convenience, however, great, is not sufficient.

"This rule has been applied in cases of right of way of necessity, as in *Whitehouse v. Cummings,* 83 Me. 91, 21 Atl. 739, 23 Am. St. Rep. 756; *Kingsley v. Land Co.,* 86 Me. 279, 29 Atl. 1074, 25 L. R. A. 502; *Hildreth v. Googins,* 91 Me. 227, 39 Atl. 550; in case of stairway, *Stillwell v. Foster,* 80 Me. 333, 14 Atl. 731; and of drainage, *Dolliff v. B. & M. R. R.,* 68 Me. 173. And the test of necessity is whether the party claiming the right can at reasonable cost on his own estate and without trespassing on his neighbors create a substitute. See cases *supra,* and in case of a chimney, *Buss v. Dyer,* 125 Mass. 287; a drain, *Randall v. McLaughlin,* 10 Allen (Mass.) 366, and *Thayer v. Payne,* 2 Cush. (Mass.) 327.

"Applying this test in the case at bar necessity in its strictest sense is seen to exist. It could not be seriously contended that a water supply to a stable from some source is not an absolute necessity, and the evidence here is uncontradicted that the only available source is by means of the pipe passing through the opera house cellar and connecting the pipe extending to the stable with the main. If the plaintiff's land extended to the street it might with reason be said that he should secure his supply direct from the street main. But his land is situated about 125 feet back from the street and his only means of ingress and egress is over a private way in which he has only a right of passage in common with others. Such a right of passage constitutes a limited easement, and gives him no such right in the soil that he could lay pipes in it to connect with the street main. He would be a trespasser should he attempt it. On all other sides his lot is bounded by land of other parties over which he has no rights."

Under the facts and the principles applicable thereto, the judgment should be, and it is, affirmed.

BEALS, C. J., MAIN, TOLMAN, and STEINERT, JJ., concur.