## NICHOLAS A. ROMANCHUK AND ANOTHER v. SAMUEL PLOTKIN AND ANOTHER.[1]

April 30, 1943.

No. 33,441.

[1]Reported in 9 N. W. (2d) 421.

*Fred Sorenson*, for appellants.

*Russell Smith*, for respondents.

PETERSON, JUSTICE.

In 1915 defendants acquired the real property at the northeast corner of Twelfth avenue north and Humboldt avenue north in Minneapolis, on which there was a duplex dwelling near the corner facing Twelfth avenue, known as 1312 Twelfth avenue north, and a small dwelling toward the rear facing Humboldt, known as 1206 Humboldt avenue north. Both houses were equipped with plumbing serviced by a common sewer drain which connected with the public sewer in Humboldt avenue.

On February 23, 1921, defendants acquired the real property now owned by plaintiffs, located immediately east of the duplex and known as 1310 Twelfth avenue north. At that time this property was without plumbing and sewer connection. There has not been, nor is there now, a public sewer in Twelfth avenue north. In 1922 defendants installed plumbing in the house at 1310 Twelfth avenue, which they connected with a sewer drain they laid below the basement floor and underground extending from the rear of the house across the properties of the parties into the basement of the duplex, where it was connected with the sewer drain from the duplex to the street. After this connection was made the one

sewer drain connecting with the public sewer in Humboldt avenue serviced the three houses on defendants' property.

All the sewer drainpipes are four inches in diameter. The pipes became obstructed and clogged on numerous occasions, causing sewage to back up and thus creating an unsanitary and unhealthful condition. This condition is likely to recur periodically. A separate sewer drain connecting the property now owned by plaintiffs with the public sewer in Humboldt avenue could be installed at a cost of $175. This would have to be laid in Twelfth avenue north. A permit to use the street for that purpose is necessary. It was not shown that a permit could be obtained.

On February 25, 1921, two days after defendants became the owners of 1310 Twelfth avenue north and about one year before they installed the plumbing and made the sewer connection there, they executed a mortgage of the property, with the appurtenances thereto belonging, to one Margaret Roggeman. The mortgage contained the usual covenants of a warranty deed. In July 1936, Margaret Roggeman acquired title through foreclosure of the mortgage. She did not inspect the property either when she took the mortgage or when she foreclosed it. She dealt through an agent, who afterwards looked after the renting and who, out of rents collected, paid defendant Plotkin for cleaning and repairing the sewer.

On August 8, 1938, plaintiffs purchased the property from Roggeman. They dealt through Roggeman's agent. Plaintiff Nicholas Romanchuk testified that he observed the drainpipes in an unfinished and unused part of the basement. Over objection, he also testified that the agent told him that the sewer drain connected with the public sewer in the street.

Neither the mortgage to Roggeman nor the deed to plaintiffs mentions any easement in the sewer across defendants' land.

In 1941 the common drain connecting these properties with the city sewer became clogged, necessitating repairs. Plaintiffs' proportionate share of the repairs was $25, of which they paid five dollars prior to trial and the balance during the trial.

In 1915, when defendants acquired the property with the duplex on it, and ever since, there has been a fence between their and plaintiffs' properties. The fence encroached on plaintiffs' property one foot and five inches according to the description thereof in the mortgage and deed. In 1941 defendants gave their consent to plaintiffs' entry on their land for the purpose of putting some asbestos siding on their house.

On October 22, 1941, defendant Samuel Plotkin notified plaintiffs that on November 5, 1941, the connection of the sewer drain serving their property with the drain to the sewer in the street would be severed. Plaintiffs then brought this action to enjoin defendants from disconnecting their sewer connection and to compel them to remove the fence.

The court below found that plaintiffs had an easement for the use and maintenance of the sewer drain across defendants' property connecting with the sewer in Humboldt avenue north, subject to the requirement that they pay their proportionate share of the cost of repairing and maintaining the same, and that the fence encroached one foot and five inches on plaintiffs' land. As conclusions it ordered judgment enjoining defendants to refrain from interfering with plaintiffs' use of the sewer drain and from severing the connection of their sewer drain with the sewer leading to the street, and to remove the fence so as not to obstruct the one foot and five inches of plaintiffs' property mentioned.

Here, defendants contend that the finding that plaintiffs are entitled to an easement for the use and maintenance of the sewer drain across defendants' land is without basis, because (a) the severance of ownership occurred when the Roggeman mortgage was given, which was prior to the installation of the sewer drain on plaintiffs' property and the connection thereof with the one across their other property; (b) the use of the sewer drain across defendants' property to Humboldt avenue was not apparent but, on the contrary, was concealed by the fact that the sewer pipes were underground; and (c) the use thereof was not necessary to the beneficial use of plaintiffs' property. They also contend that, al-

though the boundary line between plaintiffs' and defendants' properties was, according to the description of plaintiffs' property in the mortgage and in the deed, one foot and five inches west of the fence, the line was established by the location and maintenance of the fence for a period exceeding that of the statute of limitations and that plaintiffs acquiesced in such location by purchasing with knowledge of the fence.

■ The doctrine of implied grant of easement is based upon the principle that where, during unity of title, the owner imposes an apparently permanent and obvious servitude on one tenement in favor of another, which at the time of severance of title is in use and is reasonably necessary for the fair enjoyment of the tenement to which such use is beneficial, then, upon a severance of ownership, a grant of the dominant tenement includes by implication the right to continue such use. That right is an easement appurtenant to the estate granted to use the servient estate retained by the owner. Under the rule that a grant is to be construed most strongly against the grantor, all privileges and appurtenances that are obviously incident and necessary to the fair enjoyment of the property granted substantially in the condition in which it is enjoyed by the grantor are included in the grant. Huhn v. Ryan, 208 Minn. 128, 293 N. W. 138; Smith v. Lockwood, 100 Minn. 221, 110 N. W. 980; Swedish-Am. Nat. Bank v. Connecticut Mut. L. Ins. Co. 83 Minn. 377, 86 N. W. 420; Gaynor v. Bauer, 144 Ala. 448, 39 So. 749, 3 L.R.A.(N.S.) 1082; John Hancock Mut. L. Ins. Co. v. Patterson, 103 Ind. 582, 2 N. E. 188, 53 Am. R. 550; Jones, Easements, pp. 98, 104, §§ 125, 129. Prior to the severance and while there is unity of title, the use is generally spoken of as a quasi easement appurtenant to the dominant tenement. Wiesel v. Smira, 49 R. I. 246, 142 A. 148, 58 A. L. R. 818.

It is commonly said that three things are essential to create an easement by implication upon severance of unity of ownership, *viz.*: (1) a separation of title; (2) the use which gives rise to the easement shall have been so long continued and apparent as to show that it was intended to be permanent; and (3) that the ease-

ment is necessary to the beneficial enjoyment of the land granted. Read v. Webster, 95 Vt. 239, 113 A. 814, 16 A. L. R. 1068; Berlin v. Robbins, 180 Wash. 176, 38 P. (2d) 1047.

Defendants contend that the sewer was not an apparent quasi easement at the time of severance of ownership, upon the theory that the severance took place when the mortgage was given, which was approximately one year before the sewer drain was installed on plaintiffs' property, citing Mt. Holyoke Realty Corp. v. Holyoke Realty Corp. 284 Mass. 100, 187 N. E. 227. In Massachusetts and some other states a mortgage of real property conveys the title subject to defeasance upon payment of the mortgage debt or upon fulfillment of the conditions of the mortgage. We do not follow that rule. Under Minn. St. 1941, § 559.17 (Mason St. 1927, § 9572), the rule that a mortgage of real estate conveyed the legal title was abrogated and the rule adopted that a mortgage creates a lien in favor of the mortgagee as security for his debt with right of ownership and possession in the mortgagor until foreclosure and expiration of the period of redemption. Gandrud v. Hansen, 210 Minn. 125, 297 N. W. 730; Lemon v. Dworsky, 210 Minn. 112, 297 N. W. 329; Seifert v. Mutual Benefit L. Ins. Co. 203 Minn. 415, 281 N. W. 770; Orr v. Bennett, 135 Minn. 443, 161 N. W. 165, 4 A. L. R. 1396. Where a mortgage on real estate creates a lien, the execution of the mortgage does not effect a severance of title, but the foreclosure of the mortgage does. Naccash v. Hildansid Realty Corp. 140 Misc. 730, 252 N. Y. S. 383, reversed on other grounds, 236 App. Div. 686, 257 N. Y. S. 750, second case, motion denied, 236 App. Div. 758, 258 N. Y. S. 1040; Amalgamated Properties, Inc. v. Oakwood Gardens, Inc. 148 Misc. 426, 266 N. Y. S. 381, affirmed, 238 App. Div. 867, 263 N. Y. S. 927; Berlin v. Robbins, 180 Wash. 176, 38 P. (2d) 1047, *supra*. Under the title theory, a use created after the giving of a mortgage does not give rise to an easement in favor of the mortgagee, Mt. Holyoke Realty Corp. v. Holyoke Realty Corp. 284 Mass. 100, 187 N. E. 227, *supra;* but, under the lien theory, it does and passes to the purchaser at the foreclosure sale, Farina v. Lucisano, 246 App. Div. 553, 282

N. Y. S. 832. In Cannon v. Boyd, 73 Pa. 179, the court held, without any particular discussion of the distinction in question, that an implied easement passed to the purchaser under mortgage foreclosure sale where the use on which it was based came into existence after the execution of the mortgage, but prior to the foreclosure sale.

It cannot be seriously contended that the sewer in question was not continuous and permanent. It is urged, however, that, since the sewer, both in plaintiffs' house and outside in plaintiffs' and defendants' yards, was underground, it was not apparent. "Apparent" does not necessarily mean "visible." The weight of authority sustains the rule that "apparent" means that indicia of the easement, a careful inspection of which by a person ordinarily conversant with the subject would have disclosed the use, must be plainly visible. An underground drainpipe, even though it is buried and invisible, connected with and forming the only means of draining waste from plumbing fixtures and appliances of a dwelling house, is apparent, because a plumber could see the fixtures and appliances and readily determine the location and course of the sewer drain. Wiesel v. Smira, 49 R. I. 246, 142 A. 148, 58 A. L. R. 818, supra, Annotation, 58 A. L. R. 832. In 17 Am. Jur., Easements, p. 985, § 80, the text reads:

"As a general rule, implied easements are restricted to servitudes which are apparent. Although there is some conflict of authority as to whether existing drains, pipes, and sewers may be properly characterized as apparent, within such rule most courts take the view that appearance and visibility are not synonymous and that the fact that a pipe, sewer, or drain may be hidden underground does not negative its character as an apparent condition, at least, *where the appliances connected with, and leading to, it are obvious.*" (Italics supplied.)

In Larsen v. Peterson, 53 N. J. Eq. 88, 93, 94, 30 A. 1094, 1097, is an elaborate discussion of the principle as applied to underground water pipes leading from a well to a pump inside a house,

where the pump was visible but the pipes were not. The court said:

"In the case in hand the controlling fact is that the pump was there visible and in use, and by its connection with the invisible pipe leading to *some* fountain the house conveyed to complainant was supplied with water. * * *

"* * * In short, in my opinion all that is meant by 'apparent,' in that connection, is that the parties should have either actual knowledge of the *quasi*-easement or knowledge of such facts as to put them upon inquiry."

In the instant case the plumbing fixtures and their connection with the sewer pipes were plainly visible. The pipes extended from the rear of plaintiffs' house toward defendants' duplex. A plumber easily could have ascertained that the pipes, although underground and invisible, extended under the duplex, where they connected with the drain leading from the duplex to the sewer in the street.

The authorities are in conflict as to what is meant by "necessary" in this connection. Some hold that "necessary" means substantially the same as indispensable. Others hold that it means reasonably necessary or convenient to the beneficial enjoyment of the property. Vice-Chancellor Pitney in Toothe v. Bryce, 50 N. J. Eq. 589, 595, 603, 25 A. 182, 184, points out that this requirement was adopted from a statement by Gale in his work on Easements. His conclusion was that "the so-called 'necessity' upon which the judges relied was, in fact, no necessity at all, but a mere beneficial and valuable convenience." Jones, Easements, pp. 127, 128, §§ 154, 155, adopts that view. The weight of authority supports the view that "necessary" does not mean indispensable, but reasonably necessary or convenient to the beneficial use of the property. Wiesel v. Smira, 49 R. I. 246, 142 A. 148, 58 A. L. R. 818, *supra,* and annotation at p. 829. In 17 Am. Jur., Easements, p. 985, § 79, the text states:

"As heretofore stated, the prevailing rule, to which, however, there is some dissent, is that the necessity requisite to the creation of an easement by implication is not an absolute necessity, but

that a reasonable necessity suffices. Generally, in order to support an easement as to drainage or sewage by implied grant the easement must be reasonably necessary or convenient to the beneficial enjoyment of the property. Where it appears that property is sold fully equipped with visible plumbing and appliances to carry off waste and water, it has been held that there can be no serious dispute that the use of the drainpipe is reasonably necessary for the convenient and comfortable enjoyment of the property and passes upon conveyance of the property without specific mention."

In the instant case the use of the drain was highly beneficial and convenient to the use of plaintiffs' property. The reasonable construction of the mortgage under which plaintiffs claim title in the light of the surrounding circumstances is that the use of the sewer drain was an appurtenance to plaintiffs' property which passed under the mortgage.

Further, it appears that the parties placed a practical construction on their rights by which they in effect recognized plaintiffs' right to the easement. Plaintiffs were permitted to continue to use the sewer. Defendants charged them for repairs and maintenance, and plaintiffs paid the charges. A practical interpretation by the parties that an easement exists supports an inference that the easement is one of legal right. Winston v. Johnson, 42 Minn. 398, 45 N. W. 958.

As a word of caution, we do not hold that in all cases the existence of the three characteristics mentioned are necessary to create an easement by implication. Rules of construction are mere aids in ascertaining the meaning of writings, whether they are statutes, contracts, deeds, or mortgages. Being such, they are neither ironclad nor inflexible and yield to manifestation of contrary intention. Lawton v. Joesting, 96 Minn. 163, 104 N. W. 830; Bull v. King, 205 Minn. 427, 286 N. W. 311. As said in Long v. Fewer, 53 Minn. 156, 159, 54 N. W. 1071: "the day is past for adhering to technical or literal meanings of particular words in a deed or other contract against the plain intention of the parties as gath-

·ered·from the entire instrument." In Wiesel v. Smira, 49 R. I. 246, 142 A. 148, 58 A. L. R. 818, *supra*, the court said that the presence or absence of any or all of the characteristics should not be deemed conclusive. In 3 Tiffany, Real Property (3 ed.) p. 254, § 780, the author says:

"The rules declared by the courts as to the creation of easements corresponding to preexisting quasi easements, and of easements of necessity, constitute in reality merely rules of construction for the purpose of determining the scope of the conveyance. And the grant of the easement is implied only in the sense that the easement passes by the conveyance although not expressly mentioned, just as an easement previously created passes upon a conveyance of the land to which it is appurtenant without any express mention of the easement. It is immaterial, from a legal point of view, whether the easement passes because the instrument expressly says that it shall pass, or because the circumstances are such as to call for a construction of the language used as so saying."

We leave open the scope and effect of the characteristics mentioned in the process of construction. For present purposes, it is sufficient to hold that, tested by all three characteristics, an implied easement to the use of the sewer across defendants' land passed under the mortgage and the foreclosure thereof and that plaintiffs became the owners of the easement as grantees of the purchaser at the mortgage foreclosure sale.

■ There·is no basis for holding that defendants acquired title by adverse possession to the part of the land described in the mortgage which they enclosed by the fence and occupied. The possession of a mortgagor is presumed to be amicable and in subordination to the mortgage, even after foreclosure, until the contrary appears. Lowry v. Tilleny, 31 Minn. 500, 18 N. W. 452.

■ Nor is there any basis for holding that there was a practical location of the line by the parties where the fence was erected. Ordinarily, in order to establish a practical location of a boundary line it must appear (1) the location relied on was acquiesced in

for the full period of the statute of limitations; or (2) the line was expressly agreed upon by the parties and afterwards acquiesced in; or (3) the party barred acquiesced in the encroachment by the other, who subjected himself to expense which he would not have done if there had been a dispute as to the line. Marek v. Jelinek, 121 Minn. 468; 141 N. W. 788; Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740. Since plaintiffs' predecessor acquired title in 1936 and since there was no basis for any claim of adverse possession prior to that time, as we have pointed out, there was no practical location by adverse possession. There was no agreement for a location of the fence where it was built. Nor was there any encroachment by defendants and acquiescence by plaintiffs or their predecessor in title. The fact is that the fence was erected in 1915 long before the mortgage to Roggeman was given. The description in the mortgage controls as against the fence or other structure on the land at the date of its execution.

Affirmed.

