**Gary A. ROSENDAHL, et al., Respondents,**

v.

**John NELSON, et al., Appellants,**

**Donald N. Link, et al., Respondents.**

**No. C2-86-2085.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Sept. 18, 1987.

John F. Markert, Bloomington, for Rosendahl, et al.

Dennis P. Moriarty, Lee Vickerman, Shakopee, for Nelson, et al.

Donald N. Link, et al., Pro Se.

Heard, considered, and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Appellants John and Melba Nelson appeal from the trial court judgment holding that an implied easement existed across the Nelsons' apartment house parking lot for the purpose of allowing access to the garage on the appellants Rosendahls' property. We affirm.

## FACTS

In 1967, Donald Link purchased property in Shakopee, Minnesota. He moved a house onto a portion of the purchased property and constructed a 10–unit apartment building on the adjacent portion. Although the house had a tuck-under garage at the time Link moved it on the land, he did not build a driveway to the house. The only access to the garage was from the street, across the apartment building's parking lot.

Within about a year after Link developed the property, the Biseks became interested in purchasing the portion of the property with the house. In negotiations, Link and the Biseks orally agreed that Biseks would do painting and finishing on the house prior to their purchase.

Biseks used the apartment parking lot to access their garage while they were painting and finishing the house prior to ownership. By the time the Biseks purchased the house, a well-traveled dirt or gravel driveway had been formed leading from the parking lot to the Biseks' garage.

During the Biseks' first winter at the house, Link told them that they could use the apartment parking lot to access his driveway if they would agree to allow Link to plow excess snow from the clearing of the apartment parking lot onto their property. This arrangement continued for years, and Biseks never built a driveway.

In 1975, about 7 years after their purchase from Link, Biseks sold their house to the Rosendahls. They immediately began accessing their garage by the apartment parking lot. Link told the Rosendahls they could continue with the same agreement: they could use the apartment parking lot to gain access to their garage if he could pile snow on their property.

In 1978, Link sold his portion of the property with the apartment house to the Nelsons. For the next three years, the Rosendahls continued to use the apartment parking lot to access their garage until December 1981, when Nelson barricaded the entrance to the Rosendahls' path to their garage. Since that time, the Rosendahls have parked on the street.

Neither the Biseks nor the Rosendahls investigated building a driveway because of the layout of the property. On the east side of the house closest to the garage, the slope is very steep. From the front of the house to the back of the house by the garage, the slope drops 8 feet in an 18–foot distance. In addition, the distance between the Rosendahl house and the Nelson property line is only 11 feet. At the time of the Biseks' purchase from Link, Shakopee ordinances required a 10–foot setback, leaving no room to build a driveway. The Shakopee ordinances now require only a 3–foot setback.

Similar problems precluded a driveway on the west side. A large tree and the steps to the kitchen door were in the way of a driveway. Since the garage is on the east side of the house, the angle of the driveway built on the west side of the house would cover most of the backyard.

In June 1982, the Rosendahls filed suit against the Nelsons and the Links. After court trial, the trial court held an implied easement existed as a matter of law across the apartment house parking lot for the purpose of allowing access to the tuck-under garage. It also permanently enjoined the Nelsons from obstructing the easement.

## ISSUE

Did the trial court err in holding that an implied easement existed?

## ANALYSIS

An easement by implication is created if the following factors exist:

(1) a separation of title;

(2) the use which gives rise to the easement shall have been so long continued and apparent as to show that it was intended to be permanent; and

(3) that the easement is necessary to the beneficial enjoyment of the land granted.

*Romanchuk v. Plotkin,* 215 Minn. 156, 160, 9 N.W.2d 421, 424 (1943). Except the necessity requirement, these factors are only aids in determining whether an implied easement existed. *See Olson v. Mullen,* 244 Minn. 31, 40, 68 N.W.2d 640, 647 (1955).

Regarding the first factor, the two parcels were once owned by one party and that common ownership was severed when Link conveyed the house to the Biseks.

The second factor is an apparent and long-continued use. The use must be apparent and long-continued as of the time of the separation of title. *See id.* 244 Minn. at 41, 68 N.W.2d at 647. The record indicates that, prior to severance and before the Biseks moved into the house, the Biseks were continuously using the parking lot as an easement to gain access to their garage. At the time the Biseks took title in December 1968, their use of the path had created a dirt or gravel driveway from the parking lot to the tuck-under garage, created by their use of the easement.

The second factor also requires that the long and apparent use must show the easement was intended to be permanent. The trial court concluded that this use of the parking lot to gain access to the garage was so long-continued and apparent that it clearly demonstrated Link's intention, prior to severance of the title, that the easement across the parking lot was to be permanent.

Regarding the necessity requirement, on the east side of the house, the slope and the width precluded the building of a driveway. Even if the slope had not precluded the building of a driveway, extensive landscaping or grading would have been necessary. A large tree and the steps to the kitchen door precluded a driveway on the west side. Also, since the garage was on the east side of the house, the angle of the driveway built on the west side of the house would cover most of the backyard.

Appellant argues that the court's findings were erroneous. Specifically, he objected to the court's finding that insufficient space existed on one side of the house because the grade was "precipitous." While the slope might not be precipitous within the dictionary definition, with regard to whether a car could safely be driven over the slope, the exhibits indicate that the slope was very steep.

The trial court also found that to alter the slope on the east side would require "drastic and prohibitively expensive landscaping or grading." Neither party called expert witnesses or entered evidence regarding the cost of constructing a driveway or the necessary grading and landscaping. Rosendahl and Link testified that construction of a driveway would be costly because of the grading; the narrow space between the Rosendahl house and the Nelson property; putting timbers in to prevent Nelson's land from eroding away; and the building, in effect, of two driveways, one going down the graded slope and one making the 180-degree turn towards the garage. The court was not clearly erroneous in concluding from this testimony that the project would be drastic and expensive.

With regard to all the objections to the trial court's findings, where the record as a whole is sufficient to support the decision, error in any one of the findings not affecting the result is harmless error and immaterial to the decision on appeal. *Locksted v. Locksted,* 208 Minn. 551, 552, 295 N.W. 402, 404 (1940).

The trial court's findings and holding were not clearly erroneous. Absent a clearly erroneous application of the law, the trial court must be upheld.

### DECISION

The trial court is affirmed.