**In re the Marriage of Earl Clark NIXON, Petitioner, Respondent,**

v.

**Carol Ann NIXON, Appellant.**

**No. C6–86–1750.**

Court of Appeals of Minnesota.

Aug. 18, 1987.

Julian Hook, Minneapolis, for respondent.

Douglas P. Johnson, Legal Aid Service of Northeastern Minnesota, Duluth, for appellant.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Carol Nixon appeals from a post-decree order denying a motion for new trial and from the dissolution judgment and decree, alleging the trial court committed reversible error in refusing to record the interview with the children or accept counsel's proposed questions for the interview as required by statute. We affirm.

## FACTS

The parties were married in 1967 and have four children, ranging in age from 7 to 14 years at the time of the dissolution in June 1986.

Respondent, Earl Nixon, is employed as a computer analyst, grossing about $33,000 per year. Appellant is a licensed teacher, who also does craft work and grosses $10,-000 a year.

In 1982, the parties took into their home a disabled person, Jan Forbort. Respondent, appellant's parents and brother all testified that appellant soon began spending more time tending to Forbort than caring for the parties' children. Respondent testified that appellant's physical contact with Forbort extended beyond assisting with Forbort's treatments. He stated that appellant and Forbort would sit in the living room holding hands or have their arms around each other and would quickly separate when respondent entered the room. Appellant's parents stated that when they visited the parties' home, appellant spent most of her time in Forbort's room with the door closed, and did not visit or socialize without Forbort. Appellant would not take the children on outings unless Forbort accompanied them, and usually would not accompany the family on outings at all, preferring to stay home with Forbort.

In 1984, respondent told appellant that if Forbort did not move out, both appellant and Forbort would have to leave. Appellant and Forbort left the next morning, moving to Forbort's cabin, 120 miles north of the family's home. The children stayed with respondent, and continued their contacts with friends, church, home and school. Appellant did not call or see her children for one month after the move.

In late 1984, respondent commenced dissolution proceedings. Before trial, court services prepared a custody study. The January 13, 1985, study noted that the children

> preferred to live primarily with their father. They all felt that their mother spent too much time with her friend Ms. Forbort and that Ms. Nixon would not keep the mother-child relationship confidential. They believed she would tell her friend everything.

It recommended that respondent be granted physical custody of the children.

A second custody study, prepared on November 18, 1985, found that the children wished to live with their mother through the 1985/1986 school year. Since respondent acceded to these wishes for the duration of the school year, the custody study recommended that appellant have physical custody of the children.

At the final dissolution hearing, appellant's mother testified that she believed her daughter had been a good parent before Jan Forbort had moved into the parties' home, but since that time, she believed the best interests of the children required that respondent be granted custody. She believed respondent was the best custodial parent because appellant's unusual relationship with Jan Forbort detrimentally affected the children and because the continuity of school, church, friends and home beneficially affected them.

Appellant's father and brother also testified that they believed that the best interests of the children required that respondent be granted permanent custody. Appellant's relatives testified they believed that appellant had the potential to be a

good mother to her children, but her preoccupation with Forbort precluded it.

The court interviewed the children without record or attorneys present, and found:

All four of the minor children clearly expressed the preference to remain with their father. The father has provided a stable, loving environment for the children during the pending of these proceedings. The [father] and children have continuously resided in their neighborhood for the past seven years. The children have attended the same school system for the past seven years. They have attended the same church for 13 years. Two of the boys have been members of the same scout troops for five years. The children have had the same playmates and friends for seven years. The children are well adjusted to their home, school, church and community. It is undisputed that [the father] has provided love, affection, guidance and nurturance to the children. , This family unit, consisting of the [father] and the children, has made the most of a difficult and trying period of time. The [father] has assumed all of the parenting duties for the minor children. Both parties are fit and proper parents. It is clearly desirable that the stability and continuity of parenting provided by [the father] be continued.

Appellant's sole allegation on appeal is that the trial court committed reversible error by failing to record its discussion with the children and refusing to propound counsel's suggested questions.

## ISSUE

■ Did the trial court commit reversible error by failing to record its discussion with the children and refusing to propound counsel's suggested questions?

## ANALYSIS

The court may interview the child in chambers to ascertain the child's reasonable preference as to custodian, if the court deems the child to be of sufficient age to express preference. The court shall permit counsel to be present at the interview and *shall permit counsel to propound reasonable questions to the child either directly or through the court. The court shall cause a record of the interview to be made* and to be made part of the record in the case unless waived by the parties.

Minn.Stat. § 518.166 (1984) (emphasis added). The statute clearly mandates that the trial court, if it chooses to interview the children, must record that interview and entertain questions from counsel. Here, the trial court violated the requirements of the statute. While we cannot condone the trial court's disregard of statutory requirements, and recognize that its conduct constituted error, we must decide whether that error requires reversal of the custody determination.

■ First, we are satisfied that the trial court relied on factors in addition to the children's stated preference in reaching its decision. We believe these additional factors in and of themselves are sufficient to support the custody determination. The record reflects that interaction and interrelationship of the children with their parents and with one another were detrimentally affected when they were with their mother in Forbort's presence. They interacted better with their father in their own home. Their adjustment to home, school, and community were all more satisfactory while they were in the custody of their father. The children had lived in a stable, satisfactory environment for many years. Maintaining that continuity and stability was important. The permanence of the family unit was strengthened at the custodial home more consistently than at Forbort's home. Finally, the court noted respondent's capacity and disposition to give the children love, affection, and guidance, and to continue their education and nurture. This contrasts with appellant's dedication to ministering extensively to the needs of Forbort. *See* Minn.Stat. § 518.17, subd. 1.

■ We conclude that the record substantiates the trial court's decision even when all reference to the children's preference is disregarded. Therefore, the trial

court's failure to comply with the requirements of Minn.Stat. § 518.166 (1984) does not require reversal.

### DECISION

Because there is a complete trial record and because the trial court relied on factors unrelated to the children's preference, the trial court's violation of the statute does not require reversal of the custody determination.

Affirmed.