Dale E. HANKA, Appellant,

v.

Lowell POGATCHNIK, Respondent,

John F. Nash et al., Respondents,

American Bancorporation, Inc., Respondent.

No. 47551.

Supreme Court of Minnesota.

Feb. 9, 1979.

Curtin, Emerick & Mahoney and Richard A. Emerick and Donna Hanbery, Minneapolis, for appellant.

Belzer & Brenner and Louis W. Brenner, Minneapolis, Geraghty, O'Loughlin & Kenney, Briggs & Morgan and Samuel L. Hanson, St. Paul, for respondents.

Heard before ROGOSHESKE, PETERSON, and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This case arises out of the sale of plaintiff Dale E. Hanka's controlling interest in the First National Bank of Kilkenny (Kilkenny Bank). Hanka appeals from an adverse judgment and from an order denying him a new trial in an action for breach of contract against defendant Lowell E. Pogatchnik and in an action for fraudulent inducement of the breach of contract against defendants John F. Nash, Robert Sipple, American National Bank and Trust Company (American), and American Bancorporation, Inc. (ABI). Upon completion of Hanka's case in chief, tried to the court sitting without a jury, the trial court granted the motion by all of the defendants to dismiss under Rule 41.02(2), Rules of Civil Procedure. The dispositive issue is whether there was sufficient evidence for the trial court to find that the purchase price of $90,000 had been filled in when Hanka signed the July 20, 1973, option contract which sold his interest in the Kilkenny Bank to defendant Pogatchnik. Upon the record submitted, we affirm the trial court's finding that the option contract signed by Hanka contained all the essential terms at the time of signing and was the complete agreement of the parties.

In 1969, Hanka purchased the Kilkenny Bank from Pogatchnik for $130,000. At that time, the book value of the bank was

about $100,000. In the 4 years from the time Hanka purchased the bank until he began negotiating its resale to Pogatchnik, the bank had been unprofitable, but its ostensible book value had increased to $120,000 by 1973.

Hanka, while owner, involved the Kilkenny Bank in several questionable loan transactions with a business venture of his, the Recreational Land Development Corporation (Rec Land). These transactions impaired the capital of the bank, as disclosed by an examination of the bank by the office of the United States Comptroller of the Currency. In one of these transactions, Hanka signed a $92,000 check from Rec Land's account in the Kilkenny Bank when Rec Land's account was nearly depleted, which he did not dishonor as president of the Kilkenny Bank. Hanka concealed this overdraft by means of bookkeeping entries by obtaining promissory notes payable to Kilkenny Bank. None of the notes was ever paid. In short, Kilkenny Bank accumulated a loan portfolio containing many uncollectable loans, which seriously threatened its solvency, and Hanka's only hope for recovering some of his investment in the bank was to sell it to someone who could infuse capital.

Hanka contacted Pogatchnik in May 1973 and asked him whether he would be interested in purchasing Hanka's stock in the Kilkenny Bank. Pogatchnik was interested if the bank could be moved to Faribault. With the aid of defendants John F. Nash and Robert Sipple, officers of the American National Bank and Trust Company, Pogatchnik was able to secure financing from that bank to infuse the capital necessary to obtain the approval of the comptroller of the currency's office to move to Faribault.

The gist of Hanka's cause of action is that he and Pogatchnik reached an oral agreement for the sale of the bank for a purchase price substantially in excess of $90,000, which Pogatchnik breached being fraudulently induced to do so by Nash and Sipple, and that no written contract was ever consummated. Hanka admits signing a written option form for the sale of the bank but claims that the price of $90,000 was not filled in at the time of the signing. Instead, Hanka insists that the $90,000 figure was later fraudulently inserted on the form.

The defendants contend and the trial court found that it was Hanka who engaged in fraud by concealing the insolvent nature of the bank which resulted from the Rec Land dealings. Defendants admit that a price for the bank well above $90,000 had been considered, but $90,000 (the amount required to redeem Hanka's pledged Kilkenny Bank stock) was all the Pogatchnik would agree to when he learned the true financial condition of the bank. Defendants contend and the trial court found that Hanka signed the option contract on July 20, 1973, when it was completely filled in, including the $90,000 price term.

We hold that the trial court's finding that the option contract was the complete and integrated contract of the parties is adequately supported by the evidence. Certainly the finding is not clearly erroneous, since our careful consideration of the entire record does not persuade us that a mistake has been committed. See, *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

Since the July 20 option contract was the complete and fully-performed agreement of the parties, Hanka's breach of contract and fraudulent inducement claims fail, and the trial court was compelled to dismiss after the plaintiff's case.

Hanka alleges additional errors in the conduct of the trial and the findings of fact. The only question for consideration is whether the trial court's rulings on evidence prevented the plaintiff from proving additional facts which might have altered the finding that the July 20 contract was the complete and integrated contract of the parties.

■ Hanka argues that the trial court prevented him from impeaching the defendants by refusing to allow him to inquire into the terms of the settlement between Pogatchnik and his codefendants. The

court was fully aware of the existence of the settlement agreement and realized the possible implications of it, but ruled it a collateral matter to the claims of Hanka against defendants. The trial court did not abuse its discretion in so deciding.

Hanka attacks numerous other findings of the trial court and contends that the cumulative effect of these errors warrants reversal. It would serve no useful purpose to discuss each of these numerous contentions. Where a decisive finding of fact is supported by sufficient evidence and is adequate to sustain the conclusions of law, it is immaterial whether some other findings are not so sustained. *Locksted v. Locksted,* 208 Minn. 551, 552, 295 N.W. 402, 404 (1940). The decisive finding in this case, which adequately sustained the conclusions of law, was that the July 20 option contract was the complete agreement of the parties and that no material term was blank when Hanka signed it.

Hanka's arguments that he was denied a fair trial and that the court erroneously applied the parol evidence rule are without merit. As to the latter argument, once Hanka took the stand and offered proof of an oral contract and fraudulent inducement, the trial court admitted all relevant parol evidence. Until this time, the trial court had little choice but to presume that the July 20 option contract was the written agreement of the parties, because Hanka initially introduced the option contract through cross-examination of Pogatchnik and other adverse witnesses who testified that the July 20 option was, in fact, the complete agreement of the parties.

The dispositive fact issue was fully heard by the trial court. Hanka sought to prove a number of oral contracts containing various terms, but the trial court, as finder of fact, declined to credit Hanka's testimony. Instead, the trial court credited Pogatchnik and his codefendants, who testified that the July 20 option contract was the integrated agreement of the parties and was completely filled in when Hanka signed it. We conclude this determination by the trial court is adequately supported by the evidence.

Affirmed.

KELLY, J., took no part in the consideration or decision of this case.