In re the Marriage of Steven A. JOHNSON, Petitioner, Respondent,

v.

Meridee A. JOHNSON, Appellant.

No. CX–87–2247.

Court of Appeals of Minnesota.

May 31, 1988.

Kent D. Laugen, Patrick J. Costello, Ltd., Red Wing, for petitioner, respondent.

Joanne Thatcher Swanson, Swanson Law Office, St. Paul, Charles J. Lee, Bentley, Christianson & Lee, Red Wing, for appellant.

Considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ., without oral argument.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment dissolving the 13–year marriage of appellant Meridee A. Johnson and respondent Steven A. Johnson, and from an order denying Meridee's motion for amended findings or for a new trial. Because the trial court's findings fail to support an award of sole physical custody to Steven and because the only evidence presented favors custody being awarded to Meridee, we reverse and award custody to Meridee and remand on the issue of child support.

## FACTS

The sole issue at trial was the custody of the parties' three sons, ages 13, 10, and 8. During the marriage, Meridee was a homemaker and employed occasionally by the school district as a swimming instructor and aerobics teacher. Steven is a mortician and operates a funeral home. The parties both grew up in Red Wing, Minnesota, where they lived for the last 10 years of their marriage. Many relatives also lived in Red Wing, and the children had much contact with both parties' extended families.

After the parties separated permanently in September 1985, the children lived with Meridee in the marital homestead. In May 1986, Meridee announced that she was planning to move to Arizona with the children. Her plans were postponed when Steven objected and obtained a temporary injunction against the move. Meridee then enrolled in a secretarial course at the vocational institute in Red Wing, which she completed in March 1987. By that time, she decided not to move to Arizona because it would be too difficult on the children.

Meridee eventually secured a job in West Bloomington, Minnesota and rented a three-bedroom town house in Apple Valley, which is a 45–minute drive from Red Wing. She testified that she chose to live in Apple Valley

> because of the school system. I was close enough to work, but I thought Apple Valley offered a lot of the same things I had in Red Wing. It's a small community, they could walk to church, there's a playground, there's a dirt bike path, there's a pond for the dog to swim. It offers a lot of value.

At the time of trial, Meridee had already enrolled the children in school, and had arranged day care with a neighbor.

Because the marital homestead had been sold, the children moved in with Steven

while Meridee relocated in Apple Valley. Steven was then living with his parents. He planned to remarry in November 1987 and purchase a home in Red Wing. Although he had signed a purchase agreement by the time of trial, he had not yet obtained financing.

The trial court had ordered a custody investigation to be conducted by social worker David Olson. Olson prepared his report at a time when Meridee was still planning to move to Arizona. In a videotaped deposition which was shown at trial, Olson was informed that Meridee's plans had changed and that she now was residing in Apple Valley. Olson testified that the children did not specifically express a custodial preference, but that they perceived themselves to be living with Meridee. He further indicated that both parents were involved with the children, but that Meridee was the primary caretaker both before and after the parties' separation. Olson finally testified that it would be in the children's best interests to move to Apple Valley and stay with Meridee. He stated that this would be the least disruptive alternative because although the children would lose daily contact with their father, continuity of care would be preserved by remaining with their primary parent.

Testimony was taken from both parties, Steven's fiance, a former neighbor, and Meridee's mother. This testimony confirmed Olson's evaluation that although Steven was an involved father, Meridee had performed most of the nurturing and caretaking duties. Steven further testified that although the children had been raised as Catholics, if granted custody he would raise them in his Lutheran faith.

Following presentation of the evidence, the court interviewed the children in chambers. During the course of the interview, the eldest child stated that "if my mom decides to move to Apple Valley I think it might be better for me to live here, because of my dad." The younger two made no statements of preference.

The trial court found that each child was capable of expressing a custodial preference, but that only the eldest had stated a definite preference to live with Steven. It then found that the children were comfortable living in Red Wing and had a support group of relatives in town. The court also found that "when the children were younger, [Meridee] attended to the majority of the personal needs of the children, but, in the projected family living and working arrangements [Steven] will be more of a primary caretaker than will be [Meridee]."

The court awarded the parties joint legal custody of the children, but granted sole physical custody to Steven subject to reasonable visitation by Meridee. Steven was ordered to continue the children's upbringing in the Catholic faith. Meridee was ordered to pay $200 per month in child support.

## ISSUE

Do the trial court's findings and the evidence presented support an award of custody to respondent?

## ANALYSIS

■ Minn.Stat. § 518.17, subd. 3 (1986) provides that "[i]n determining custody, the court shall consider the best interests of the child * * *." Minn.Stat. § 518.17, subd. 1 (Supp.1988), lists the factors which a court should use in determining the best interests of a child. These criteria mandate that custody be given to the primary caretaker when both parents are suitable custodians and the child is too young to express a preference. *Pikula v. Pikula*, 374 N.W.2d 705, 711–12 (Minn.1985).

■ "Under the statutory scheme and *Pikula*, the trial court is required to make particularized findings of fact regarding the best interests of the child and the primary parent." *Ohm v. Ohm*, 393 N.W.2d 411, 413 (Minn.Ct.App.1986). A trial court is not required to address every statutory factor. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171–172 (1976). Rather, "[i]t is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in

reaching its decision." *Id.* at 83, 249 N.W. 2d at 172.

■ In this case, the trial court found that the children are old enough to express a preference. While Meridee challenges this finding, we cannot conclude that it is clearly erroneous given the children's ages and the trial court's interview of the children. *See Petersen v. Petersen*, 394 N.W. 2d 586, 588 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986) (seven-year-old child capable of expressing custodial preference). We do conclude, however, that the trial court's remaining findings fail to support an award of custody to Steven and ignore undisputed evidence supporting an award to Meridee.

■ Those findings are clearly erroneous because the trial court improperly accorded too much weight to Steven's intention to stay in Red Wing. Such a consideration, while proper when central to the concepts of continuity and stability in children's lives, is inappropriate in this case where Meridee has moved only 45 minutes away in order to obtain employment and the children will be moving to a different neighborhood regardless of which parent is granted custody. Indeed, Meridee testified that she chose Apple Valley as her new home partly because of its proximity and similarities to Red Wing. We believe it was error to give custody to Steven merely because he is able to continue working and residing in Red Wing. *See Kennedy v. Kennedy*, 376 N.W.2d 702, 706–07 (Minn. Ct.App.1985).

The findings which are affected by this incorrect assumption include that the children had lived in Red Wing all of their lives and were comfortable living in Red Wing and attending Red Wing schools, that each of the children interacted well with both parents and siblings, and that the extended families residing in Red Wing formed a support network. *See* Minn.Stat. § 518.17, subd. 1(c) and (d).

■ Similarly affected is the trial court's finding that the eldest child expressed a definite preference to remain with his father but that the younger two expressed no

preference. *See* Minn.Stat. § 518.17, subd. 1(b). While the oldest child stated that he might like to live with his father if his mother moved away from Red Wing, at no time did he make a statement which can be characterized as a definite preference. What he did express to the trial judge was a definite preference to remain in Red Wing, which is substantially different than indicating that he clearly and unequivocally wished to remain with his father. Even assuming that the oldest child did express a preference to live with his father, that preference is not determinative of final placement and is only one of the factors to be considered in ascertaining a child's best interests.

Most important is the trial court's failure to consider the role of Meridee as the primary parent. Although the *Pikula* doctrine is not controlling in this case because of the children's ages, the importance of this concept to the best interests standard cannot be ignored. *See Pikula*, 374 N.W. 2d at 712 ("Continuity of care with the primary caretaker is not only central and crucial to the best interest of the child, but is perhaps the single predicator of a child's well-being"). Particularly, the trial court failed to mention Olson's recommendation that the children live with Meridee in Apple Valley because of the desirability of maintaining continuity. *See* Minn.Stat. § 518.17, subd. 1(e). The court also failed to acknowledge in Meridee's favor that she had already established a proposed custodial home while Steven's future residential plans were relatively uncertain as of the time of trial. *See* Minn.Stat. § 518.17, subd. 1(f). Thus, if the court had considered Meridee's role as the primary parent, it would have had to make a number of findings favoring her as the custodial parent.

■ Finally, although the court found that the parties had equal capacity to give the children love, affection and guidance, it failed to realistically consider the parties' ability to continue raising the children as Catholics. *See* Minn.Stat. § 518.17, subd. 1(h). The court did order Steven to raise the children in the Catholic faith, even af-

ter he insisted at trial that if granted custody he would raise the children in his own Lutheran faith. The court again ignores Meridee's central role in the children's upbringing. Had this factor been properly considered, it too would have favored an award of custody to Meridee.

In conclusion, the trial court's findings not only fail to favor an award of custody to Steven, but the only evidence presented compels that physical custody of the children be awarded to Meridee. We accordingly reverse the decision of the trial court and remand on the issue of child support.

## DECISION

Reversed and remanded.