In re the Marriage of Ross L. SMITH,
Petitioner, Respondent,

v.

Cathleen A. SMITH, Appellant.

No. C0-87-1995.

Court of Appeals of Minnesota.

June 21, 1988.

Dennis W. Hagstrom, Fergus Falls, for respondent.

Michael R. Lochow, Fargo, N.D., for appellant.

Considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ., without oral argument.

## OPINION

NORTON, Judge.

This is an appeal from an order granting primary physical custody of the parties'

children to respondent Ross Smith. Because the trial court's findings fail to support an award of primary custody to Ross Smith, we reverse and remand for more findings on the preference of the children, their best interests, and the primary parent.

## FACTS

Cathleen Smith and Ross Smith were married on November 4, 1973 in Detroit Lakes, Minnesota. The parties have three children, who were 12, 10 and 8 years of age at the time of the hearing.

During the early years of their marriage, the couple operated a riding stable and bought and sold horses. They began milking cows in about 1981, and shared the farm responsibilities. From 1982 to 1984, Mrs. Smith sold livestock supplies, from a home-based operation. She had received training in sales, farm management, and veterinary skills for this job. Until 1984, Mrs. Smith was also a traditional wife and mother.

In August 1984, the parties' animals and machinery were repossessed. At this time, Mrs. Smith began training as a farm advocate. During the winter of 1984 through 1985, both Mr. and Mrs. Smith attended many farm protests. In January 1985, Mrs. Smith went on a tractorcade from Canada to Texas and was gone for about 27 days. From January to September 1985, Mrs. Smith went on six to eight farm advocate trips. Each trip lasted from one to three days.

Mrs. Smith also worked for the League of Rural Voters in early 1985. For six months she attended meetings and presented slide shows in a 70–mile radius from her home. These meetings were often held two to three times a week, causing Mrs. Smith to be gone from late afternoon until mid to late evening. Mrs. Smith also continued with her farm advocacy interests during this time. Much of Mrs. Smith's work could be done from her house by using the telephone.

The parties dispute who planned and prepared the meals while Mrs. Smith was away and who helped the children with homework. Mrs. Smith continued to do the shopping for the family and to take care of any medical needs of the children. Mrs. Smith attended parent-teacher conferences and attended PTA events while they were married. There is no mention that Mr. Smith did any of these activities while his wife was at home.

In the spring of 1985, Mr. Smith worked on a dairy farm for approximately 60 days. He then did odd jobs and carpentry work until November of 1985. Mrs. Smith took no trips from August 1985 until February of 1986, when she took a short trip. In March of 1986, Mrs. Smith started her own farm advocacy business and again started traveling around Minnesota, North Dakota and South Dakota. These trips were usually accomplished in a day.

The children of the couple have always lived on the family's farm near Vergas. The children have attended school in Frazee, Minnesota. The family of the children is also in the Vergas area. The children now live on the farm with their father. The farm includes a house, farm buildings and 80 acres.

On July 18, 1986, Mrs. Smith and the children moved to West Fargo, North Dakota. Mrs. Smith then started a divorce action in North Dakota. The North Dakota court refused jurisdiction regarding the issues of child custody and support. Mr. Smith brought this custody action in Otter Tail County. At a hearing for temporary custody, the trial court gave physical custody of the children to Mr. Smith during the school week, so they could attend Frazee School. Mrs. Smith had custody of the children on the weekends in West Fargo, North Dakota.

A hearing on permanent custody was held on January 7 and 8, 1987. The court held an *in camera* interview of the children on January 7, 1987. Mrs. Smith's attorney was not aware that an *in camera* interview of the children would be held. Mrs.

Smith's attorney objected to being excluded from the *in camera* hearing held in January. The trial court did not disclose what was said during the *in camera* interview.

There was much testimony at the hearing regarding how the oldest daughter was doing in school. Mr. Smith also testified about how he was caring for the children now that he had sole custody of them during the school week. There is no specific testimony regarding the children's lives prior to the separation, except for the testimony regarding the trips which Mrs. Smith took periodically in 1985 and 1986. Both parties submitted studies done by the respective counties which found that either parent would be acceptable and provide an appropriate home for the children.

The trial court held another *in camera* interview of the children on June 15, 1987. The *in camera* interview was not recorded nor were the attorneys allowed to be present. The attorneys were also not permitted to submit questions, contrary to the provisions of Minn. Stat. § 518.166. The trial court did take notes during the interview held in June of 1987, which are part of the trial court file but not incorporated into any factual findings.

The trial court issued an order giving joint legal custody of the children, with Mr. Smith being awarded the primary physical custody of the children. The trial court made no findings on who the primary parent was at the time of the separation, the best interests of the children pursuant to Minn. Stat. § 518.17, or the preference of the children. The trial court made many findings that the oldest child was now adjusting to school and doing better. In its findings, the trial court stated a typical day for the children with the father as it has been since the couple's separation. There was no finding as to how the children and parents interacted prior to the separation. The most pertinent finding relates to the view expressed by Mrs. Smith's mother of the parties' home life:

> * * * Of particular note is a reference of Jean Dahring, [Mrs. Smith's] mother,

which is attached to the study done by Otter Tail County Social Services. Ms. Dahring was submitted as a reference by [Mr. Smith], her son-in-law. Ms. Dahring states that [Mr. Smith] has "taken care of them (the parties' children) for the last three years, is concerned with their schooling and helps with homework." This statement substantiates the testimony of [Mr. Smith] and others who testified on his behalf regarding his caretaking function with the children during the last few years.

Cathleen Smith appeals the granting of primary physical custody to Ross Smith, alleging that the trial court abused its discretion. Additionally, Mrs. Smith claims that the trial court committed reversible error by not allowing counsel to be present during the *in camera* interview.

## ISSUES

I. Do the trial court's findings support granting physical custody of the parties' children to respondent?

II. Did the trial court commit reversible error by not following Minn. Stat. § 518.166, regarding the *in camera* interviews of the children?

## ANALYSIS

### I.

"Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). "The trial court's findings must be sustained unless clearly erroneous." *Id.* This court must review the evidence in a light most favorable to the trial court's findings. *Kennedy v. Kennedy,* 403 N.W.2d 892, 897 (Minn.Ct.App.1987). If the findings are not contrary to the whole record, the trial court will be supported. *Sucher v. Sucher,* 416 N.W.2d 182, 184–85 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1988).

■ The trial court is to look at facts and circumstances at the time of the separation to determine who was the primary parent and should include specific *Pikula* criteria. *Hemingsen v. Hemingsen*, 393 N.W.2d 414, 417 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 17, 1986). A determination of child custody must be based on the best interests of the child, requiring consideration of "all relevant factors" enumerated by statute. Minn. Stat. § 518.17, subds. 1 and 3 (1986). When a child is too young to express a preference, the best interest of the child is usually fulfilled by awarding custody to the primary caretaker. *Pikula*, 374 N.W. 2d at 712.

■ Appellant argues, and we agree, that the findings do not support an award of primary physical custody to respondent. There is no finding by the trial court that Mr. Smith was the primary parent at the time of the separation. While the findings do state that Mrs. Smith was gone on some trips, and that Mr. Smith had to care for the children while Mrs. Smith was gone, there is no finding nor evidence to show that Mr. Smith cared for the children while Mrs. Smith was at home. The evidence tends to show that the parties had to share the caretaking duties after 1984, with Mrs. Smith caring for the children while she was home and Mr. Smith caring for the children while Mrs. Smith was away.

Furthermore, the *Pikula* standards for primary caretaker may not apply to this case since the parties' children may be old enough to express a preference. *See Petersen v. Petersen*, 394 N.W.2d 586, 588 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986) (seven-year-old child capable of expressing custodial preference).

■ The trial court's findings are also insufficient to award primary custody to Mr. Smith under the best interest criteria provided by statute. The trial court, in awarding custody to Mr. Smith, did consider that the children would be staying in their same home and going to their same school. We believe it was error to give custody to Mr. Smith solely because he is able to continue working and residing on the family farm. *See Johnson v. Johnson*, 424 N.W.2d 85 (Minn.Ct.App.1988) (reaffirming that the trial court is not to consider the continuity of care factor solely in terms of one parent's ability to continue caring for the children in the family home).

The trial court should not disregard the living conditions in West Fargo with Mrs. Smith merely because Mr. Smith does not want his children to be raised in the city. There is ample evidence indicating the mother could provide a stable, satisfactory environment in West Fargo. Additionally, there is ample evidence to show that the children have adjusted to their mother's home in the Fargo community during their weekend and vacation visits.

The children's preferences are also relevant to the best interest factors. When the trial court interviewed the children, it should have made a finding as to whether the children were capable of expressing a preference, and if the children had any preference. While the children stated that they liked going to school in Frazee, this is substantially different than indicating that they wished to remain with their father.

We believe that the trial court's findings are insufficient under the *Pikula* standard, best interests standard, and considering the children's preference to award primary physical custody to Mr. Smith. We remand for more findings by the trial court specifically on the children's preference and the best interest factors. In its discretion, the trial court may require further testimony, and interview the children so that it has sufficient evidence to make proper findings.

II.

While it is in the trial court's discretion whether to conduct interviews of the children, the trial court must follow statutory requirements if it decides to hold such interviews. Mandatory requirements are clearly set forth in the statute:

The court may interview the child in chambers to ascertain the child's reason-

able preference as to custodian, if the court deems the child to be of sufficient age to express preference. The court shall permit counsel to be present at the interview and shall permit counsel to propound reasonable questions to the child either directly or through the court. The court shall cause a record of the interview to be made and to be made part of the record in the case unless waived by the parties.

Minn.Stat. § 518.166 (1986).

It was clearly erroneous for the trial court to exclude counsel from the interviews with the children. The trial court should also have permitted counsel to ask questions, either directly or through the court. Furthermore, the trial court erred by failing to make a record of the two interviews.

This court in *Nixon v. Nixon,* 410 N.W. 2d 417 (Minn.Ct.App.1987), concluded that even though the trial court violated Minn. Stat. § 518.116, there was no reversible error because the record substantiated the trial court's decision, even if all the reference to the child's preference was disregarded. In this case, the record does not substantiate the trial court's decision.

We need not determine whether the violation of Minn. Stat. § 518.166 was reversible error in this case, since we are remanding for further findings. The trial court, on remand, must follow the statutory criteria while interviewing the children to determine their preference as to custody.

### DECISION

The trial court's findings are insufficient to support granting respondent primary physical custody of the children. On remand for further findings, the trial court, pursuant to Minn. Stat. § 518.166, shall permit counsel to be present while interviewing the children, and the interview shall be made part of the record.

Reversed and remanded.