**In re the Marriage of Connie Rae LaVALLE, Petitioner, Appellant,**

v.

**David William LaVALLE, Respondent.**

**No. CO–87–2242.**

Court of Appeals of Minnesota.

Oct. 11, 1988.

Doris C. McKinnis, Patricia A. Callaghan, John D. Hagen, Jr., Minneapolis, for appellant.

Owen Reed Humphreys, Forest Lake, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

This is an appeal from the judgment and order amending the judgment in a dissolution proceeding. The wife contests the trial court's decisions on custody, forgiveness of the husband's child support arrearages, award of $200 per month temporary spousal maintenance, division of property, and award of attorney fees. The husband filed a notice of review, challenging the trial court's division of property and debt, award of temporary spousal maintenance, award of attorney fees, and denial of his request for child support. We affirm in part, reverse in part, and remand.

## FACTS

At the time of the dissolution, appellant Connie Rae LaValle was 36 years old, and respondent David William LaValle was 40 years old. They were married on June 26, 1971. They have two surviving children, Tiffany Renee and Desiree Ann, ages 13 and 10 respectively at the time of the dissolution.

In December 1984, the parties separated and David left the home. The court issued a temporary order on December 10, 1984. Connie was granted exclusive use of the home and custody of the children, subject to the right of visitation by David. David was ordered to pay child support in the amount of 30% of his weekly check. The issue of temporary maintenance was reserved.

Connie experienced financial problems. David eventually became responsible for debts in excess of $1,700 in connection with the homestead. In October 1985, the homestead of the parties was sold. Equity proceeds of $60,000 were divided equally between the parties and $10,000 was reserved in a trust fund.

Around this time, the parties entered into a voluntary agreement to transfer custody of the children from Connie to David. Connie asserted that this was done because she had no resources to obtain alternative housing for herself and the children until after the sale of the house. She indicated this was a temporary arrangement; the children were to reside with David until the end of the school year, and were then to return to live with her. David, who was current with his child support payments while Connie had custody, ceased making payments when he had custody of the children.

Sometime in 1985, Connie began experiencing problems with chemical dependency, and in January 1986, entered a treatment facility in Columbia, Missouri, where her family resides. She successfully completed treatment, participated in an aftercare program and continues to attend Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) approximately two to three times each week. She has had one relapse since treatment.

Connie asserts that while David had custody of the children, he repeatedly denied

her requests to see the children and interfered with mail and telephone calls. Court orders issued on May 5, 1986, August 6, 1986, and December 9, 1986 ordered visitation for Connie with the children.

Custody of the children was contested at the trial. Gary Rick, who prepared the court services custody evaluation and testified, recommended, after evaluating the statutory factors, that David be awarded sole legal and physical custody of the children, with liberal and reasonable visitation for Connie. His recommendation was based upon the desire to maintain continuity for the children, because they had resided with David since October 1985, and a belief that David was "more capable of offering a responsible, on-going, nurturing home life." He indicated there was, according to David, evidence of neglect of the children while Connie was actively using drugs prior to October 1985. He also indicated that David had continued anger towards Connie, and that he made exaggerated statements about her. He did not feel that David's "anxious, intense manner" had detrimental effects on the children.

Dr. Pi–Nian Chang, testifying for Connie, was unable to make a recommendation because he had concerns about both parents and because he was unable to do a full evaluation. He believed Connie was committed to being reunited with her children, and that she was a loving, caring mother. He would have liked more information on her future plans, and on her rehabilitative history. He felt that Connie would be the better custodial parent. He believed David was loving and caring, but had concerns as to David's ability to meet the girls' emotional needs, his interference with the contacts between Connie and the children, and his unresolved anger.

Connie is presently residing in Missouri and is employed part-time as a cashier, working approximately 20 hours per week, and earning $4.00 per hour, for a gross income of approximately $350 per month. During the marriage, she worked part-time as a hairdresser and operated a beauty shop out of the home, so that she could care for the children. David is employed as a heavy equipment operator and earns a net salary of $2,180 per month. Connie claimed present living expenses in excess of $1,200 per month, while David claimed present living expenses in excess of $1,750 per month.

The court found that David was a fit and proper parent, and that it was in the best interests of the children that he be awarded sole legal and physical custody. It found that Connie was the primary caretaker of the children during the marriage. The court was convinced that Connie's past chemical dependency presented "potential future unfitness." It noted that Connie's chemical dependency apparently affected her ability to provide for the parties' children prior to the change of custody in October 1985. In its memorandum, the trial court said:

> [Connie] voluntarily abandoned her custody of the children during this period. It is unclear to this Court whether this action on [Connie's] part was done out of concern for the children's welfare or whether it was an act of convenience at the time. The Court views this past episode with great concern and out of fear of a similar future episode, this Court is most reluctant to award [Connie] the permanent care and custody of the children. This determination is only bolstered by the fact that the children appear to have favorably adjusted to a new life with their father in the past two years.

The court found David has been the primary caretaker since October, 1985, and that a transfer of custody, which would result in a move to Missouri where Connie is currently living, would disrupt the emotional and psychological stability which the children have enjoyed since October 1985. While the court had no doubts about Connie's ability to provide the children with love, affection, and guidance, it questioned her continued fitness as a custodial parent, because she allowed her use of illicit drugs to interfere with her parenting abilities in the summer and fall of 1985. Finally, it noted that while the children expressed various wishes regarding custody, they

have most frequently expressed a desire to be with both parents.

The court reserved the issue of child support because of Connie's present inability to pay. It denied Connie's request for a judgment of child support arrearages accrued since custody was transferred to David. It awarded each party the property in his or her possession, finding insufficient evidence to suggest the division was not equal. It divided the $10,000 in escrow between the parties, and ordered David to pay $2,000 of Connie's attorney fees. It denied David's request for reimbursement of $1,700 of household expenses he incurred during the separation. The court found Connie in need of a temporary rehabilitative maintenance award, because she had been absent from the full-time job market for over ten years, has managed to find only temporary and part-time employment since her move to Missouri, and was not earning enough income to meet her monthly expenses. It awarded her $200 per month in temporary spousal maintenance for two years.

Connie appeals from the judgment and order amending judgment; David filed a notice of review.

## ISSUES

1. Did the trial court abuse its discretion in awarding custody of the children to respondent?

2. Did the trial court abuse its discretion in denying appellant a judgment for child support arrearages incurred after custody of the children was transferred to respondent?

3. Did the trial court abuse its discretion in awarding appellant temporary spousal maintenance of $200 per month?

4. Did the trial court abuse its discretion in its allocation of property between the parties?

5. Did the trial court abuse its discretion in awarding appellant $2,000 in attorney fees?

6. Did the trial court abuse its discretion when it failed to award respondent child support?

## ANALYSIS

### I.

Connie challenges the trial court's custody award of the children to David. The supreme court recently set out the scope of review by an appellate court:

"Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Weatherly v. Weatherly*, 330 N.W.2d 890 (Minn.1983); *Berndt v. Berndt*, 292 N.W.2d 1 (Minn. 1980). * * * [D]e novo review of the entire record * * *" is inappropriate. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

Further, the "trial court's findings must be sustained unless clearly erroneous." *Id.* Deference must be given to the opportunity of the trial court to assess the credibility of the witnesses. Minn.R.Civ.P. 52.01.

*Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988).

In determining custody, the court shall consider the best interests of the child. *Id.* at 210. The statute defines relevant factors which are to be evaluated by the court. Minn.Stat. § 518.17, subd. 1 (Supp.1987). In addition,

[W]hen both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody [shall] be awarded to the primary parent absent a showing that that parent is unfit to be the custodian.

*Pikula v. Pikula*, 374 N.W.2d 705, 713 (Minn.1985). The relevant time for ascertaining which parent was the primary caretaker is at the time of the parties' separation. *Id.* at 714 n. 3. If there is lengthy litigation over custody, the events since the separation "are not only relevant, but indeed are crucial in determining the child's best interests." *Sefkow*, 427 N.W.2d at 212. When the child is not too young to express a preference, the *Pikula* analysis no longer applies. *Sefkow*, 427 N.W.2d at

212. The court emphasized the importance of stability in custody determinations, as well a multifaceted inquiry into all relevant factors. *Id.*

■ The trial court considered the statutory factors and determined it was in the best interests of the children that David be awarded sole legal and physical custody of the children. It also conducted a *Pikula* analysis, determining that while Connie was the primary parent, David had been the primary parent since October 1985.

Connie argues that the trial court abused its discretion in failing to properly apply *Pikula* and in making findings which were clearly erroneous. She first argues that under *Pikula,* the court cannot depart from the presumptive award to her as primary caretaker unless the children express a preference or there is a strong showing of unfitness. We agree that this is a situation in which the children have not expressed a preference, and there is no strong showing of unfitness of Connie. However, the supreme court in *Sefkow* held that *Pikula* no longer controls when the children are old enough to express a preference but do not do so. *Sekow,* 427 N.W.2d at 212. Instead, the best interests of the children are determinative. *Id.*

The trial court here concluded it was in the best interests of the children that David be awarded custody. It considered the statutory factors. The factors which tipped the balance in David's favor were Connie's chemical dependency, and that the children, who had resided with David since October 1985, had achieved psychological and emotional stability there.

Connie argues there is no evidence that she "abandoned" the children. However, it is clear that her decision to transfer custody and the fact that the children have remained with David since that time, were determinative factors for the trial court. Connie also contends that the trial court improperly based its custody decision on a parent remaining in a certain area. *See Imdieke v. Imdieke,* 411 N.W.2d 241, 244 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987). She argues that the trial court improperly considered her chem-ical dependency as evidence of "potential future unfitness" because, unlike cases cited by the trial court, she has successfully completed treatment. *Cf. Storlien v. Storlien,* 386 N.W.2d 812, 814 (Minn.Ct.App. 1986). Finally, she argues that she gave up custody of the children when the homestead was sold, because she did not have resources with which to provide housing for herself and the children.

While, as in *Sefkow,* the trial court could have awarded custody to Connie under the facts of this case, it did not. The trial court made its finding that it would be in the best interests of the children for their custody to be awarded to David. The supreme court has made it clear that this court may not reweigh the evidence and find its own facts. *Sefkow,* 427 N.W.2d at 210. We cannot say that under the facts of this case it was an abuse of discretion for the trial court to award custody of the children to David.

## II.

■ After the parties voluntarily agreed to transfer custody from Connie to David, David stopped making child support payments, and arrearages of more than $10,-000 accrued. Connie requested a judgment for the arrearages. The trial court concluded that in light of the fact that Minn. Stat. § 518.64, subd. 2 allows a court to retroactively decrease a child support payment if failure to pay is not willful, assessing arrearages during the period in which David had custody and Connie paid no child support would be wholly inequitable.

Connie argues the trial court incorrectly applied the standards set out in Minn.Stat. § 518.64, subd. 2 (1986), rather than the amended statute. The legislature amended Minn.Stat. § 518.64, subd. 2 to allow modification decreasing support retroactively:

> only with respect to any period during which the support obligor has pending a motion for modification but only from the date that notice of the motion has been given to the obligee and to the court or other entity which issued each support order.

1987 Minn. Laws ch. 403, art. 3, § 90. The law was effective on June 13, 1987. *Id.,* § 99.

The trial, at which the issue of arrearages was contested, was held prior to the effective date. Arrearages accrued prior to this date can be forgiven upon a showing of a change of circumstances justifying the modification, and that respondent's failure to pay was not willful. *See Bruner v. Bruner,* 429 N.W.2d 679, 682 (Minn.Ct.App.1988).

Under the particular facts of this case, when the parties voluntarily agreed to transfer custody, David assumed all cost and care of the children for an extended period and David was ultimately awarded permanent custody of the children, the trial court did not abuse its discretion in forgiving the arrearages. *See Huckbody v. Freeburg,* 388 N.W.2d 385, 389 (Minn.Ct.App. 1986); *Lindberg v. Lindberg,* 379 N.W.2d 575, 578 (Minn.Ct.App.1985), *aff'd,* 384 N.W.2d 442 (Minn.1986).

### III.

The trial court awarded Connie $200 per month in rehabilitative maintenance for two years. She contends that the trial court erred in the amount and duration of the award; David argues that spousal maintenance should not have been awarded. Connie also argues that the trial court abused its discretion when it failed to award her temporary maintenance after the separation.

The court may order maintenance if the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs, and is unable to provide adequate self-support. Minn.Stat. § 518.552, subd. 1. The trial court is to award maintenance after considering all the relevant factors, including those listed in Minn.Stat. § 518.552, subd. 2 (1986). The basic issues are the financial needs of Connie and her ability to meet those needs, balanced against David's financial condition. *Erlandson v. Erlandson,* 318 N.W.2d 36, 39–40 (Minn.1982). Where there is uncertainty as to the necessity of a permanent award, the court shall order a permanent award

and leave its order open for later modification. Minn.Stat. § 518.552, subd. 3. The standard of review on an appeal from an award of maintenance is whether the trial court abused its discretion. *Erlandson,* 318 N.W.2d at 38.

The trial court found Connie was in need of temporary rehabilitative spousal maintenance. The court based its decision to award temporary rehabilitative maintenance on the fact that Connie had been absent from the full-time job market for more than 10 years, that she has been able to find only temporary and part-time employment, and that she is not earning enough income to meet her monthly living expenses. In its amended findings, it stated that Connie was a trained cosmetologist prior to the separation of the parties, and that she has expressed reluctance to reenter that field. It noted that it has by its award afforded Connie the opportunity to train for and acquire employment in another field.

The trial court's findings did not address the probability of Connie becoming self-supporting, the standard of living enjoyed during the marriage, or her loss of earnings, seniority, retirement or employment opportunities. Such failure here constitutes an abuse of discretion. *Nash v. Nash,* 388 N.W.2d 777 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986). Further, the court's award is not consistent with the facts it found. We remand for additional findings and an award consistent with the findings. Because the need for permanent maintenance is uncertain, the award shall be permanent with the court retaining jurisdiction for later modification, if necessary. *Musielewicz v. Musielewicz,* 400 N.W.2d 100, 103–04 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). We do not, however, find an abuse of discretion in the failure to award temporary maintenance after the separation.

### IV.

Connie disputes the fairness of the property division, arguing that she received substantially less than an equal share of

household goods, furnishings and personal property, and that she should have been awarded the entire $10,000 remaining from the sale of the homestead.

At trial each party submitted a list of property and a valuation thereof. Connie estimated that the value of personal property in her possession was $5,565, and the value of the property in David's possession was $18,370. David valued the property in his possession at $4,917. He did not value the property awarded to Connie.

The trial court found that the parties had each established separate households since the separation and that insufficient evidence existed to determine that the property division was less than equal. The court then awarded each person the property each currently had in his or her possession.

 The distribution of household goods and furnishings will be overturned only upon a showing that the trial court abused its discretion. *Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981). No abuse of discretion occurred in the distribution of household goods. Nor can we say an abuse of discretion occurred in the trial court's equal division of the $10,000 in proceeds.

David argues that responsibility for the more than $1,700 which he paid for household expenses was not resolved. The trial court denied David's request for reimbursement of over $1,700 expenses which he incurred. This was not an abuse of discretion.

### V.

A trial court may award reasonable attorney fees to a party after considering the financial resources of both parties. Minn.Stat. § 518.14 (1986). The decision of whether to grant such an award rests almost entirely within the discretion of the trial court. *Novick v. Novick,* 366 N.W.2d 330, 334 (Minn.Ct.App.1985). Connie incurred attorney fees of more than $10,000. The trial court awarded her $2,000 in attorney fees. Given the trial court's broad discretion in making the decision, no abuse of discretion occurred here.

Connie's request for an award of attorney fees for her appeal is denied.

### VI.

David argued that the trial court abused its discretion when it reserved an award of child support. Minn.Stat. § 518.551, subd. 5 provides that when the net income per month of the obligor is $400 or less, the order is based upon the ability of the obligor to provide support. The trial court did not abuse its discretion in reserving the issue of child support.

### DECISION
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.