*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0421**

J. T. S., petitioner,
Respondent,

vs.

S. L. V. B.,
Appellant.

**Filed December 28, 2015
Affirmed
Smith, Judge**

Winona County District Court
File No. 85-FA-13-2596

Lee Ann Riehle, Streater & Murphy, P.A., Winona, Minnesota (for respondent)

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Mary E. Cincotta, Throndset Law Office, St. Michael, Minnesota (for appellant)

Michelle Frohip, Rochester, Minnesota (guardian ad litem)

        Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Smith,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

        We affirm the district court's custody determination because the district court did

not abuse its discretion in awarding sole physical custody to respondent.  We also affirm

the district court's denial of appellant's motion for a new trial because the district court did not abuse its discretion when it limited the testimony of appellant's expert.

## FACTS

The parties' child was born in July 2008. After child's birth, the parties cohabitated for a two-year period in Winona, Minnesota, but eventually separated in June or July 2010. In December 2013, respondent-father J.T.S. initiated proceedings to be adjudged the father of child and sought joint legal and physical custody of child. Appellant-mother S.L.V.B. answered, demanding sole legal and physical custody of child. On April 15, 2014, the district court adjudged father's paternity and temporarily awarded the parties joint legal custody and mother sole physical custody. In June 2014, mother informed father that she was moving from Winona to Eagan, so the district court issued an amended temporary order to accommodate that move.

In August 2014, the district court held a trial to determine legal and physical custody of child. By the time of trial, the parties' positions on custody had changed:

> Father initially sought joint legal custody and physical custody of the minor child. Mother initially sought sole legal and physical custody of the child subject to [f]ather's parenting time. At the time of trial, after reviewing the [g]uardian ad [l]item's report [m]other was suddenly seeking an award of joint legal and joint physical custody. Father was not interested in sharing custody with [m]other any longer . . . .

At trial, the district court heard testimony from mother, father, and other witnesses in support of each party. Mother's expert, Dr. Michael Shea, also testified at trial, although in a limited capacity due to the district court's decision to limit the scope of his

testimony. The district court also heard testimony from the guardian ad litem who had prepared a report on child's best interests. The guardian ad litem concluded that giving father sole physical custody was in child's best interests.

On September 2, 2014, the district court again adjudged father's paternity, awarded sole physical custody to father, and gave mother and father joint legal custody. Mother then moved for amended findings of fact and conclusions of law, and alternatively, a new trial. The district court amended one of its findings of fact, one paragraph of its order, and denied mother's motion for a new trial.

**D E C I S I O N**

**I.**

Mother first argues that the district court abused its discretion when it awarded sole physical custody to father. "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). A district court's findings of fact will be sustained unless they are clearly erroneous. *Id.* A finding is clearly erroneous if it is "not reasonably supported by the evidence as a whole." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999) (quotation omitted). "When determining whether findings are clearly erroneous, an appellate court views the record in the light most favorable to the [district] court's findings." *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). Even if a district court's findings are erroneous, "error in any one of the findings not affecting the result is harmless error and immaterial to the decision on appeal." *Rosendahl. v. Nelson*, 408 N.W.2d 609, 612

3

(Minn. App. 1987), *review denied* (Minn. Sept. 18, 1987). The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000).

## A.    Primary Caretaker

Mother argues that the district court erred in finding that "[b]oth parties have been [child's] primary caretaker." "The primary caretaker is *the person* who provides the child with daily nurturance, care and support." *Custody of Child of Williams v. Carlson*, 701 N.W.2d 274, 280 (Minn. App. 2005) (emphasis added) (quotation and quotation marks omitted). "When the facts demonstrate that both parents share responsibility for and performance of child care in an entirely equal way, then no preference arises." *Id.* The primary-caretaker determination is to be made based on the facts and circumstances present at the time of the parties' separation. *LaValle v. LaValle*, 430 N.W.2d 224, 228 (Minn. App. 1988).[1]

The district court did not err in finding both parties to be child's primary caretaker. Several portions of the record support father's caregiving activities: (1) father testified that shortly after child's birth, mother went back to work and he fed child; (2) father testified that mother would occasionally take child to work, but that he frequently picked child up and provided care; (3) father testified that he was the one to put child to sleep most nights; and (4) father's mother testified to father providing a lot of childcare during

---

[1] We cite *LaValle* only for the relevant timeframe in which to make the primary-caretaker determination. *See* 430 N.W.2d at 228. And although we address it first, we stress that under Minn. Stat. § 518.17, subd. 1(a) (2014), the primary-caretaker factor may not be used "to the exclusion of all others," and "may not be used as a presumption in determining the best interests of the child."

4

the parties' cohabitation. The record also supports a finding that mother provided a substantial amount of care: (1) mother testified that she nursed child for over seven months; (2) mother testified that she took child to work with her; (3) mother testified to preparing meals for child; and (4) mother's mother testified to mother being a "dedicated" parent. Additionally, the guardian ad litem testified that mother and father were "pretty active parents." Consequently, the record supports what the district court inferred: because there was evidence of both parties' roles as primary caretaker, "no preference arises." *See Williams*, 701 N.W.2d at 280.

Mother also contends that she was the primary caretaker at the time of separation. Mother points to the district court's finding that immediately *after* the separation, mother provided more care to child than father as evidencing her primary-caretaker role. But what happened immediately after the parties' separation is not determinative. *See LaValle*, 430 N.W.2d at 228. The district court heard considerable testimony regarding the parties' parenting roles during the cohabitation period and concluded that both acted as primary caretaker. Therefore, the district court's finding is not clearly erroneous. *See Rogers*, 603 N.W.2d at 656.

Mother also argues that the district court's findings regarding her alleged failure to provide father the opportunity for more parenting time are clearly erroneous. Even assuming these findings are clearly erroneous, the district court's other findings support the conclusion that both parties acted as primary caregivers. Therefore, any error on this point is harmless. *See Rosendahl*, 408 N.W.2d at 612.

5

**B.     Other Findings of Fact**

Mother also challenges many of the district court's factual findings.  After carefully reviewing the record, we find support for the district court's findings that father and mother shared child on nearly a 50/50 basis before litigation commenced, that mother was unwilling to obtain child's prekindergarten vaccinations and only did so after father insisted, and that father made the initial dental appointment for child.  Testimony from father and the guardian ad litem, as well as the guardian ad litem's report, support these findings.  As such, these findings are not clearly erroneous.  *See Rogers*, 603 N.W.2d at 656.  We address mother's remaining contentions in further detail.

Mother argues that the district court's findings on father's income and work study are erroneous.  The district court found that father made $15 per hour and that he had work study to help pay bills.  Father testified to making $13 per hour, and nowhere in the record does it appear that father makes a greater amount.  And the only testimony about father's work study indicated that it ended in 2011.  Therefore, the district court's findings are clearly erroneous.  *See id.*  But mother has not shown that the district court's custody determination was based on father making a certain level of income, let alone that a $2 per hour difference would be determinative to its decision.  Therefore, we find no reversible error.  *See Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993) ("[A]ppellants have the burden on appeal to demonstrate that the [district] court error caused them prejudice."), *review denied* (Minn. June 28, 1993); *see also Hanka v. Pogatchnik*, 276 N.W.2d 633, 636 (Minn. 1979) (stating that where the findings

6

necessary for a legal conclusion are adequately supported, a district court's inclusion of other unsupported findings is harmless error).

A thread woven throughout mother's argument on appeal is that the district court did not place enough weight on father's history of using drugs and alcohol. We acknowledge mother's concern for the impact that drugs and alcohol can have on a person's ability to parent, but disagree with mother's contention that the district court ignored this issue. The district court made several findings with respect to father's alcohol and drug use. Specifically, the district court noted father's "history of chemical abuse," father's current "recovery based lifestyle," and that father submitted a hair follicle for drug testing which came back negative. The district court also discussed many other facts relating to father's history with drugs and alcohol. Moreover, the district court stated that "should [f]ather start using again a change of custody will be considered."

Mother further contends that the district court ignored father's affidavit wherein he stated that he drinks moderately and smokes marijuana, but father explained at trial that that statement referenced the two slip-ups he has had since 2012. As with many other points, the parties' testimonies conflicted on this issue. Given this conflict, we give great deference to the district court's credibility determinations. *See* Minn. R. Civ. P. 52.01.

Mother also argues that the district court erred in not making additional findings about what mother perceives to be father's lack of stability and the detrimental effect of living in Winona on father. Essentially, mother's argument is that the district court committed reversible error in not making findings she believes the record supports. But

7

"[t]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness*, 607 N.W.2d at 474.

We therefore find no reversible error in mother's many challenges to the district court's findings of fact.

### C. Mother's Move from Winona to Eagan

Mother's remaining arguments focus on the district court's discussion of her move to Eagan. Mother first argues that the district court erred in finding that her move to Eagan was not solely for economic reasons. The district court considered the difference in mother's income between Eagan and Winona, the timing of the move, and the fact that mother only informed father of her move via an affidavit served eight days before the move. We cannot say that the district court's finding is clearly erroneous. *See Rogers*, 603 N.W.2d at 656.

Mother next argues that it is reversible error for the district court to overemphasize one parent's decision to remain in the community. Mother cites our reversal in *Johnson v. Johnson* to support her argument. *See* 424 N.W.2d 85 (Minn. App. 1988). In *Johnson*, we criticized the district court because the mother moved only 45 minutes away to obtain employment and the children were moving to a different neighborhood in regardless of who obtained custody. *Id* at 88. Most important to the *Johnson* decision was the district court's failure to find which parent was the primary caretaker, a determination paramount to the statutory regime at that time. *See id.* ("Continuity of care with the primary caretaker is not only central and crucial to the best interest of the child, but is perhaps the single predicator of a child's well-being." (quotation omitted)).

8

*Johnson* is distinguishable. At the time of the district court's decision, the statutory regime had changed such that the primary-caretaker determination was just one of many factors to be considered. *See* Minn. Stat. § 518.17, subd. 1(a) ("The primary caretaker factor may not be used as a presumption in determining the best interests of the child."). Furthermore, the facts of mother's move in this case are different from *Johnson*. Mother moved from Winona to Eagan, which the district court found to be about 110 miles away from Winona, as opposed to the 45-mile move in *Johnson*. *See* 424 N.W.2d at 88. Moreover, in contrast to *Johnson*, child would not be changing neighborhoods, but would instead remain in the same school in Winona. *See id.*

Mother cites two additional cases on the move issue, both of which are distinguishable. In *Schisel v. Schisel*, the parents were awarded joint legal and physical custody and, as a condition of custody, the court placed a geographical restriction on the parents' primary residences. 762 N.W.2d 265, 267-68 (Minn. App. 2009). On appeal, we held that it was error to impose such a geographical restriction based on the bare fact that the "minor children are ingrained in a particular community." *Id.* at 271 (quotation marks omitted). We reasoned, "[i]f that were the case, it is unlikely that any custodial parent would be allowed to relocate the primary residence of school-age children . . . ." *Id.* The situation here is different because, unlike *Schisel*, the concern is not whether a custodial parent has the ability to relocate a child, but the impact a move to a new community has on the best-interests analysis in the first place.

Mother's reliance on *Smith v. Smith* is equally misplaced. *See* 425 N.W.2d 854 (Minn. App. 1988). It is true that the *Smith* court was critical of the district court's

9

emphasis on the fact that the father was "able to continue working and residing on the family farm" in awarding him physical custody. *Id.* at 857. But that was only one of several errors the *Smith* court found: "We believe that the [district] court's findings are insufficient under the [primary-caretaker] standard, best interests standard, and considering the children's preference to award primary physical custody to [the father]." *Id.* Here, those concerns are not present. The district court made extensive findings on each best-interests factor, determined child was too young to express a preference, and found the parties' geographic locations meaningful because of the impact on the best-interests analysis.

Father argues that the district court's concern about Mother's move was great because of its effect on the best-interests analysis. We agree. Our review of the record shows that mother's move impacted the district court's findings on four of the best-interests factors: (1) "the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests"; (2) "the child's adjustment to home, school, and community"; (3) "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity"; and (4) "the child's cultural background." *See* Minn. Stat. § 518.17, subd. 1(a). In sum, the district expressed concern about an event—mother's move to Eagan—that impacted several of the best-interests factors.[2]

---

[2] We note that the move's impact on several of the best-interests factors was significant in this case because many of the best-interests factors favored neither mother nor father.

10

Mother counters that the district court's findings regarding child losing connections with extended family due to her move to Eagan and the positive effect of remaining in school in Winona are clearly erroneous. After reviewing the record, we disagree. There was testimony from the guardian ad litem and the parties' families that child's relationships with mother's and father's families had diminished after the move to Eagan. And the guardian ad litem emphasized the strong connections child had with her school and her surroundings in Winona. These findings are not erroneous. *See Rogers*, 603 N.W.2d at 656.

In sum, the district court did not abuse its discretion in awarding sole physical custody to father. Even if mother is correct in asserting that the district court made certain erroneous findings, those are harmless to the ultimate decision. *See Hanka*, 276 N.W.2d at 636; *Rosendahl*, 408 N.W.2d at 612. Moreover, we note that the testimony presented at trial conflicted greatly, meaning it was for the district court to weigh the evidence and evaluate credibility.[3] *See* Minn. R. Civ. P. 52.01 ("[D]ue regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses."); *Braith v. Fischer*, 632 N.W.2d 716, 724 (Minn. App. 2001) (stating that "the district court is in the best position to judge the credibility of the witnesses and make determinations in the face of conflicting testimony and must be given due deference"),

---

[3] The district court specifically found that mother's allegations regarding the upkeep of father's home lacked credibility. And the district court did not believe mother's testimony that father had almost no contact with child during their cohabitation. Moreover, the district court found that mother's and her witnesses' dislike of father was "palpable" during trial, whereas father had many nice things to say about mother and her parenting, suggesting that the district court did not find mother and her witnesses credible.

11

*review denied* (Minn. Oct. 24, 2001). Finally, while the district court's initial emphasis on and overt criticism of mother's move to Eagan is somewhat unorthodox, the district court properly considered all of the best-interests factors, made factual findings on each of the factors, and, based on these considerations, awarded sole physical custody to father. We will not disturb the district court's well-reasoned custody determination. *See Vangsness*, 607 N.W.2d at 477 (stating that there is "scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations").

## II.

Mother also argues that the district court abused its discretion in limiting the scope of her expert's testimony and denying her motion for a new trial on that basis. A district court's decision to exclude expert testimony "rests within the sound discretion of the [district] court and will not be reversed" absent an abuse of discretion. *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 760 (Minn. 1998). To obtain a new trial on the grounds of an erroneous evidentiary ruling, the complaining party must prove prejudicial error. *Sherman v. Marden*, 525 N.W.2d 550, 552 (Minn. App. 1994). For an expert's testimony to be admitted, Minnesota Rule of Evidence 702 requires that (1) the witness be qualified as an expert; (2) the expert's opinion demonstrates foundational reliability; and (3) the expert testimony is helpful to the trier of fact. *State v. Obeta*, 796 N.W.2d 282, 294 (Minn. 2011); *see* Minn. R. Evid. 702.

On April 10, 2014, the district court appointed a guardian ad litem to advocate for child's best interests and ordered that the guardian ad litem's report be submitted by July 1. Mother was concerned about an apparent conflict with the first guardian ad litem,

so the district court later appointed a new guardian ad litem and extended the report due date to August 1with trial commencing on August 14. This was only the second family law case for the new guardian ad litem, but she had written "numerous" reports for juvenile court and had previously practiced family law.

Mother retained Dr. Shea to testify as an expert witness regarding the guardian ad litem's report. The district court was concerned that Dr. Shea had not prepared an independent report but had instead only submitted a list of 17 issues he would address regarding the guardian ad litem's report. Prior to Dr. Shea's testimony, there was significant discussion regarding the permissible scope of his testimony. The district court discussed at length the threshold requirements for expert testimony under Minn. R. Evid. 702. It found no problems with Dr. Shea's qualifications, but was troubled with the lack of foundation for his testimony and questioned whether testimony from Dr. Shea that simply criticized the guardian ad litem's report without Dr. Shea having talked to "any players" would assist the district court as trier of fact. The district court concluded, "[i]t's foundationless. It's irrelevant, and it doesn't help me under [rule 702]." Dr. Shea testified about the generalities of custody evaluations but was not allowed to directly criticize the guardian ad litem's report.

After reviewing the record and cases cited on this issue, we are convinced that the district court properly exercised its discretion in limiting Dr. Shea's testimony. By the time Dr. Shea testified, the district court had heard testimony from a number of witnesses, including the parties, and had the guardian ad litem's report. The district court was in the best position to determine if expert testimony would help it as the trier of fact,

13

and its decision to limit Dr. Shea's testimony was not an abuse of discretion. *See Obeta*, 796 N.W.2d at 289 ("Expert testimony is not helpful if the expert opinion . . . will not add precision or depth to the [fact-finder's] ability to reach conclusions." (quotation omitted)). Because the district court did not abuse its discretion, mother was not prejudiced. Therefore, the district court properly determined that she was not entitled to a new trial. *See Sherman*, 525 N.W.2d at 552.

**Affirmed.**